BARTON H. OVERBY, *et al.*, plaintiffs in error, *vs.* EARLY W. THRASHER, defendant in error.

1. A party seeking to set aside an award, on the ground that it is contrary to evidence, must set forth all the evidence that was submitted to the arbitrators, and show that the evidence, as set forth, is all that was submitted to them.

2. Whether an award is contrary to evidence or not, is a question of law for the Court, and not a matter to be submitted to a jury, and should be heard as upon demurrer, and unless strongly and decidedly against the evidence, it should not be set aside on this ground. The same rule should govern here as in a motion for a new trial.

3. To set aside an award on the ground of fraud in one of the arbitrators, the fraud must be clearly and distinctly shown.

4. Where there is a controversy between guardian and ward, and "all matters and things growing out of and connected with said guardianship" are submitted to arbitration, it is not an excess of authority on the part of the arbitrators to cancel, by their award, a note given by the ward to the guardian in his individual character for money received from him.

5. To justify a Court in setting aside an award, on the ground of mistake, the mistake, whether of law or fact, must be gross and palpable. Mere error of judgment in the arbitrators is not a sufficient ground for setting aside the award.

Overby *et al. vs.* Thrasher.

6. Where three arbitrators are selected by the parties, and one, conceiving himself to have been selected as umpire, expressed no opinion on the points submitted, except where the others disagree, but signs the award with the others, it is doubtful if the award can be set aside on this ground. Certainly the arbitrator cannot be introduced as a witness to show his own misconduct in this respect, if it be misconduct. He stands upon the same footing with a juror called to impeach a verdict to which he has assented.

7. When a bill is filed to enforce a specific performance of a common law award, and the defendant attacks the award by a plea, the issues of fact alone should be submitted to the jury, under the charge of the Court, as to the law, and the verdict, if it set aside the award, should cover all the matters in issue between the parties, which were submitted to the arbitrators, and for this purpose evidence may be introduced upon the issues which were submitted by the arbitrators. A verdict merely setting aside the award, and going no further, is incomplete, and entitles the complainant to a new trial. Equity having acquired jurisdiction, will retain it for the purpose of settling the whole controversey.

Arbitration and award. Evidence. Fraud. Mistake. Umpire. Specific performance. Verdict. Before Judge ROBINSON. Morgan Superior Court. March Term, 1872.

Barton H. Overby and Nicholas Overby filed their bill against Early W. Thrasher, containing, substantially, the following allegations, to-wit:

That, on September 4th, 1868, having certain matters of dispute between them and said defendant touching his liability, growing out of and connected with the guardianship of complainants while they were minors, for the full settlement of the same, entered into the following agreement:

"GEORGIA—MORGAN COUNTY:

"Whereas, there are matters of controversy between Early W. Thrasher, guardian, of the county of Morgan, and Barton H. Overby and Nicholas Overby, both wards of the said Early W. Thrasher, and both of the county of Clarke, embracing all matters between them as guardian and wards. It is, therefore, agreed between the parties that all matters and things growing out of and connected with said guardianship be submitted to the arbitrament and award of Augustus Reese,

Isham S. Fannin and Nathaniel G. Foster, who shall have power to investigate all matters and determine the same according to law and equity, and to send for persons and papers under section of Code of Georgia authorizing arbitrations, and said arbitration shall be had at as early a time as possible, and the award, when rendered, shall be made the judgment of the Court and be final between the parties touching the matters under consideration.

" Signed and delivered this 4th day of September, 1868.

(Signed)      " EARLY W. THRASHER, [L. S.]

·" BARTON H. OVERBY,   [L. S.]

" NICHOLAS OVERBY.   [L. S.]"

That said arbitrators met and, after a lengthy investigation, made the following award :

" MADISON, Morgan ·county, Ga., October 19, 1868.

" We, the undersigned, arbitrators, having carefully investigated all the matters and things connected with and growing out of the guardianship of Early W. Thrasher, for Barton and Nicholas Overby, minors of Bazil H. Overby, deceased, the same having been referred to us under and by the submission herewith submitted, do make the following award :   We find that the said Early W. Thrasher has in his hands, as guardian of his four wards, to-wit: the said Barton and Nicholas, (Earl and Callie Overby still minors) the sum of $6,301 25, that being the principal and interest now due on that fund.   That of that fund the said Barton and Nicholas Overby are entitled each to one-fourth; that is to say, $1,575 25 each.   We further find that there is in the hands of said Thrasher, as guardian of Barton Overby, upon his separate and individual account, the sum of $976 40, including the $1,575 31, his portion of the general fund; that his said guardian owes him principal and interest up to to-day the said last mentioned sum of $976 40.   We further find that the said Barton Overby is entitled to one-third of the value of the receipt for notes of S. B. Hoyt, attorney at law, of Atlanta, it being a receipt given by said Hoyt to Early W.

Overby *et al. vs.* Thrasher.

Thrasher, guardian for Barton, Earl and Callie Overby. It being one note on William M. Butt and George Johnston, for $80 00, dated 7th January, 1861, and due December 25th, 1861; one on W. A. Henderson, and C. A. Whaley, for $200 00, dated 1st of March, 1861, and due 25th December, 1861 ; one on P. Shortell and John Ennis, for $192 00, dated 1st of January, 1861, and due 25th December, 1861. Said receipt having a credit on the note of Whaley & Henderson, of $137 11, dated 7th January, 1862. We further find that the receipt of Baugh for the note given him for collection, the note being for sale of a negro woman, Douly, for $525 00, be turned over to said Barton Overby as his property ; the two receipts having been excluded from the charges against said Early W. Thrasher. We further find that accounts and notes which were before us, presented by said E. W. Thrasher against said Barton Overby, and which were not embraced in the record from the Court of Ordinary, be surrendered to said Overby, to-wit: pencil memorandum note of J. C. Anderson for $58 00, November 5th, 1867; note of William Gleason for $15 00, dated April 2d, 1868; note of P. R. Thomason for $169 00, dated June 11th, 1868; E. W. Thrasher, for $25 00, August 16th, 1867; N. S. Hough, $4 11, October 28th, 1867; Bearden, $166 31, January 14th, 1868; E. W. Thrasher, signed Overby, and his wife Josephine, for $1,000 00, and dated January 15th, 1867; order to A. Thrasher for $500 00, dated 14th June, 1867. We further find that the sofa which was in controversy is the property of the said E. W. Thrasher, and shall be retained by him. We further find that there is in the hands of the said Early W. Thrasher; as guardian of Nicholas Overby, including the general fund, as well as his individual account, principal and interest up to to-day, $1,745 53. We further find that the pencil memorandum of $22 00, one note to E. W. Thrasher for $72 00, dated January 2d, 1867; to same for $146 00, April 9th, 1868; to same for $37 00, October 9th, 1866; to same for $902 64, October 2d, 1866, be surrendered to said Nicholas Overby, the same having been allowed in the settlement. We further

find that the arbitrators be allowed the sum of $100 00 each for their services, to be paid equally; that is to say, $100 00 by each of the parties to this settlement, and that the said Thrasher pay $100 00 from each of the two funds found against him in this award, and that it be allowed him in the settlement of the same. We therefore award that the said Barton Overby recover of the said E. W. Thrasher the sum of $976 40, subject to the fee of $100 00, to be paid in the currency now prevailing, and also the papers referred to in this award; and that the said Nicholas Overby recover the sum of $1,745 53, subject to the fee of $100 00, to be paid in the currency now in use, and also the papers referred to in this award. And that each of the undersigned arbitrators have $100 00 to be paid as hereinbefore. specified; and that, the parties recovering in this award have each a *fi. fa.* for the amounts respectively found in his favor, any time after four days after the adjournment of the Court to which this award may be returned and made the judgment. The several amounts found to bear interest from this day.

"AUGUSTUS REESE,    [L. S.]

(Signed)     "NATHANIEL G. FOSTER, [L. S.]

"I. S. FANNIN,     [L. S.]

"Madison, 19th Oct. 1868.      Arbitrators."

That complainants, at the March Term of Morgan Superior Court next after the rendition of said award, moved to have the same entered upon the minutes and made the judgment of said Court, when to their utter astonishment the said defendant resisted said motion on the ground that the arbitrators were not selected according to the provisions of what is known as the general arbitration statute, which objection was sustained by the Court; that by reason of this conduct on the part of said defendant said award was not made the judgment of the Court; that complainants have always been ready and willing to comply with their portion of said award, but said defendant, though frequently requested, has utterly failed and refused to comply with his. Prayer, that said defendant may

Overby *et al. vs.* Thrasher.

be decreed specifically to do and perform all and singular the matters and things required of him by said award; that the writ of subpœna may issue.

The defendant, Thrasher, pleaded to said bill substantially as follows, to-wit:

That the award of the arbitrators was the result of accident, or mistake, or the fraud of some one or all of the arbitrators, or is otherwise illegal, as will be shown by facts and figures hereafter set forth:

1st. As appears from returns in the Ordinary's office, and which were in proof before the arbitrators, this defendant had in his hands for Nicholas Overby, on January 2d, 1862: ·

| | | |
|---|---|---:|
| January 2d, 1862, in Confederate money.................................$ | | 17 87 |
| "    "    "    for Barton Overby, Confederate money.... | | 48 45 |
| "    1st,    "    rec'd of J. Winship, adm'r, for two wards. | | 350 00 |
| February 1st,    "    "    "    "    "    "    "    " | | 1,640 00 |
| April 1st,    "    "    "    "    "    "    "    " | | 300 00 |
| June 6th,    "    "    "    "    "    "    "    " | | 250 00 |
| February 17th, 1863,    "    "    "    "    "    "    " | | 700 00 |
| April 20th,    "    "    "    "    "    "    "    " | | 400 00 |
| June 7th,    "    "    from sale of negroes for B. H. Overby. | | 2,807 00 |
| "    "    "    "    "    "    "    "    " N. Overby..... | | 2,620 00 |

| | |
|---|---:|
| Jan. 7th, 1863, total amount that went into defendant's hands.$ | 9,133 32 |
| Allowing interest to May, 1866, when the first return was made after the close of the war................................................... | 1,836 84 |

| | |
|---|---:|
| Total amount, including interest, in defendant's hands...........$ | 10,970 16 |
| The records of Ordinary's Court, which were in evidence, showed that defendant had disbursed for the wards from January 1st, 1862, to May 1863, for N. Overby.............. | 313 06 |
| For B. H. Overby................................................................ | 735 77 |
| From May, 1863, to end of war, for N. Overby.................. | 861 08 |
| From May, 1863, to end of war, for B. Overby.................. | 2,338 57 |
| Amount invested in March, 1862, in sugar and molasses, afterwards impressed by the Confederate States and lost........ | 759 90 |
| Amount funded in Confederate bonds to save 33⅓ discount on old issue in 1863, kept on hand until March, 1864........... | 3,000 00 |
| In September, 1864, loaned to Reese & McHenry................ | 2,000 00 |
| In January, 1865, loaned to Hugh Ogilby......................... | 1,000 00 |
| In February, 1865, invested in cotton yarns, etc................. | 1,000 00 |
| Total amount expended..........................................$ | 11,986 38 |

| | |
|---|---:|
| This left a balance in defendant's favor of............................... | 1,016 22 |
| Deducting this amount from $1,100 00 used by defendant for the payment of his own taxes, leaves in favor of complainants....................................................................... | 83 78 |

Therefore, defendant pleads that the award is illegal in this, that instead of the above result the arbitrators find that defendant was indebted largely to the wards, when defendant, also, testified that the investments in Confederate securities and money were made in perfect good faith; defendant further testified that the money would have been lost on his hands had he not invested it, and that a calculation shows that defendant only had on his hands at the end of the war the proceeds of the Confederate money loaned Hugh Ogilby, in January 1865, which, as proven, has been compromised and settled for $75 00 in greenbacks; that the Reese & McHenry debt has been compromised by the giving of a new note by the parties for $250 00, still unpaid; also, the proceeds of the investment in cotton yarns and thread made in February, 1865, which yielded about $100 00; that these amounts, after deducting $83 78, amounting to less than $300 00, was all defendant was due to the said complainants; that in addition to the above figures, defendant had disbursed for the wards since the war the sum of $2,622 00 in good money.

2d. Defendant further pleads that the award was illegal and without evidence to support it in this, that if he was liable at all for the Confederate money invested and expended from January, 1862, to the close of the war, in no event was he liable for more than its value at the time of investment in good money, with interest to the date of the award, as follows, to-wit:

| | |
|---|---:|
| March, 1862. Sugar and molasses, $739 90, worth $1 50 for one........................................................... | $491 93 |
| Interest to date of award.......................................... | 193 15 |
| March, 1864. Confederate bonds, $1,900, $1,100 having been used for defendant's taxes, making $3,000, worth $20 for one................................................................... | 150 00 |
| Interest to date of award.......................................... | 58 50 |

Overby *et al. vs.* Thrasher.

| | | |
|---|---:|---:|
| ˙Amount brought forward................... ...... | $ 893 | 58 |
| September, 1864.  Loaned Reese & McHenry $2000, worth $21 for one........ .......... .......... ...... ...... ............. ..... | 94 | 26 |
| Interest on same to date of award...... ........ ...... ......... .......... | 18 | 50 |
| January, 1865.  Loaned Hugh Ogilby $1,000, worth $60 for one......... ...... .......... .......... ........ ......... ........ ...... | 16 | 66 |
| Interest on same to date of award......... .......... ...... ...... ......... | 7 | 00 |
| February, 1865.  Investment in yarns, etc., worth $55  for one | 18 | 86 |
| Interest on same to date of award...... ......... ...... .......... ......... | 5 | 53 |
| | | |
| Total due wards, with interest to date of award.............. | $1,007 | 70 |
| | | |
| But defendant's disbursements and advances for wards since the war amount to........ .......... ......... .......... ......... ...... | $2,622 | 00 |
| Amount due them........ ........ ............. .... .... ......... ...... ...... | 1,007 | 70 |
| | | |
| Balance in defendant's favor............... ......... ......... ...... | $1,661 | 43 |

This calculation demonstrates the illegality of the award in this, that the arbitrators did not allow to defendant the benefit of the 4th section of Act of 1868, entitled "An Act for the Relief of Debtors," etc.

3d. Defendant further pleads that said award is the result of mistake, and illegal in this, that the returns to the Court of Ordinary, in proof before the arbitrators, showed that in May, 1863, the last return made during the war, on account of the occupation of Atlanta by the Federal armies, there was a balance in defendant's hands of $8,737 67 ; and defendant further proved that from May, 1863, to the close of the war, he expended for the wards of that Confederate money the sum of $3,199 65, which, being deducted from the amount due in May, 1863, would only leave a balance of Confederate money of $5,338 02, and if defendant was liable at all for that amount, it could only be for the real value of Confederate money on May 16th, 1863, which was proven to be six dollars for one, or $923, together with interest on the same to the date of award, §345, adding to $923 leaves amount due to wards of $1,268, less the amount advanced to and expended for the wards since the close of the war, which was $2,622, which would leave a balance in favor of defendant of $1,354, and this without allowing defendant any commissions.

4th. Defendant further pleads that the said award is illegal and ought not to be enforced in this, that the abitrators awarded that this defendant should pay $100 as part of their fees, when the questions in controversy were matters in connection with the estate.

5th. Defendant further pleads that the award is illegal in this, that the arbitrators charged against the defendant the hire of the negro girl Douly, amounting to about $100, which is in palpable violation of law.

6th. Defendant further pleads that said award is the result of fraud in this, that N. G. Foster had been consulted and employed in regard to said issue by complainants prior to and before said arbitration was had; that the law firm of Foster & Foster, that is, A. G. & N. G. Foster, had a contingent fee dependent upon the final settlement of said case, all of which was unknown to defendant at the time the arbitration was had.

7th. Defendant further pleads that said award is the result of mistake of law in this, that when defendant testified before the arbitrators that prior to the war, before he became guardian for said wards, he possessed and owned property to the amount of $70,000 00, and of that amount $50,000 00 was in negroes, which were lost by the war, and that defendant had sold during the war valuable real estate in the city of Madison for Confederate money, and that too was lost, and that he had made nothing in speculations during the war with his own or his ward's money, and invoked for his relief the relief laws of the State of Georgia, they found and awarded, contrary to law and equity, that this defendant was due to one of the said wards $976 40, and to the other $1,745 53, aggregating the large sum of $2,721 93, when in truth there was a balance due to defendant of $1,661 43.

8th. Defendant further pleads that said award is the result of accident and mistake in this, that the arbitrators found one-fourth of $6,301 25, to-wit : $1,575 25, as due to Barton H. Overby ; said arbitrators further found that defendant held against said Barton H. notes and accounts amounting in the

aggregate to $1,442 46 of cash funds loaned to him in good money since the war; and said arbitrators, after allowing the credit of $1,442 46, through mistake, found that defendant is due to Barton H. Overby $976 40, instead of $132 79.

9th. Defendant further pleads that said award is the result of accident and mistake, in this: that the arbitrators found that the defendant was indebted to Nicholas Overby one-fourth of $6,301 25, to-wit: $1,575 25. Said arbitrators further found that defendant held against Nicholas Overby notes and accounts amounting, in the aggregate, to $1,179 64 of cash funds loaned to and advanced for him since the war; and said arbitrators, after allowing the credit of $1,179 64, through mistake, found that defendant is indebted to Nicholas Overby $1,745 53, instead of $395 61.

10th. Defendant further pleads that said award goes beyond the terms of the submission, in this: that the only matters submitted were the questions between complainants as wards and defendant as guardian, while the award covers notes and accounts due by Barton H. and Nicholas Overby to defendant, individually, and in no way connected with his said guardianship, one of said notes being for the large sum of $1,000 00 against Barton H. Overby and Josephine Overby, who was an entire stranger to the arbitration.

Such portions, only, of the evidence are given as are necessary to an understanding of the decision of the Court.

Albert M. Thrasher testified, "that Nicholas Overby, one of the complainants, told him, while said arbitration was pending, that if he gained nothing he would lose nothing; that Foster's fee depended upon what he got."

Barton H. Overby and A. G. Foster testified, that no contract upon the subject of fees, in reference to said arbitration, or in reference to the claim upon which said arbitration was based, prior to the arbitration nor since, was ever made, so far as they knew, with the firm of N. G. & A. G. Foster, or Nathaniel G. Foster or Albert G. Foster, either conditional or certain; that the matter was never mentioned to N. G.

Foster prior to the time when he was requested to act as an arbitrator.

Augustus Reese testified, " that he was one of the arbitrators selected by the parties and participated in making up the award ; that the arbitrators, so far as he knows or believes, used all diligence and care in their power in obtaining the facts necessary to enable them to ascertain the legal liability of the defendant to the plaintiffs, touching, connected with, or growing out of his connection with them as their guardian ; that the arbitration, with consent of parties, was adjourned from time to time to enable the parties to procure testimony and papers ; that his position in the arbitration, as he understood, was that of umpire, and, therefore, he expressed no opinion upon questions of law, except where the others differed ; that he does not recollect that they differed upon any questions of importance, except the value to be put upon the disbursements of defendant in Confederate money ; that, so far as he knows or believes, there was no mistake made by the arbitrators as to the law of the case, or as to the mode of making calculations, looking to the facts developed before the arbitrators ; that he has before him the memoranda of calculations upon which the award was based, and is unable to detect any mistake or error of law connected with the same, not having gone minutely into the calculations since the award was made up ; that it is true the evidence proved that all the money received by Thrasher was in Confederate money, and that he was charged by the arbitrators with only its true value at the time of its reception."

The jury returned the following verdict : " We, the jury, set aside the award made by the arbitrators."

Complainants moved for a new trial upon the following grounds, to-wit :

1st. Because the verdict of the jury is contrary to evidence and the principles of justice and equity.

2d. Because the verdict is contrary to law.

3d. Because all the testimony that was before the arbitrators in making the award was not submitted to the jury upon

the trial, to-wit: a certificate from Joseph Winship, administrator *de bonis non* on the estate of B. H. Overby, deceased, showing payments made by him to E. W. Thrasher, guardian of complainants and their brother and sister, during the years 1862 and 1863, of $7,280 00.

The motion for a new trial was overruled by the Court, and complainants excepted and assign said ruling as error.

A. REESE; A. G. & F. C. FOSTER, for plaintiffs in error.

BILLUPS & BROBSTON; B. H. THRASHER, for defendant.

MONTGOMERY, Judge.

1. The answer of the defendant in this case does not show that all the evidence which was submitted to the arbitrators was before the Court on the trial. As one of the grounds relied on by the defendants, on which to set aside the award, was that it was contrary to evidence, the evidence should not only be produced, but the record should show that it is all that the arbitrators had before them: *Tomlinson vs. Hardwick*, 41 *Georgia*, 547; *Ibid.*, 16.

2. When the evidence is fully before the Court, it is a question of law for the Court, and not of fact for the jury, to say whether the finding of the arbitrators is contrary to the evidence or not, and this question should be determined by the Court, upon demurrer. Unless it is very strongly and decidedly against the evidence, the award should not be set aside on this ground. Indeed, so far as a mistake in calculation is concerned—and that is the principal ground on which the defendant insists the finding is contrary to evidence—it is questionable if that mistake should not appear on the face of the award: Watson's Arbitration, 291, quoting Morgan *vs.* Mather, 2 Vesey, page 15; Comeforth *vs.* Geer, 2 Vern., 705, and other authorities. But that question is not now before us, and may not be true, under our Code. Certainly, the award is entitled, in this respect, to the same weight as a verdict, and the same rule should govern as on a motion for a new trial on

this ground. Indeed, the award is more conclusive than a verdict: 41 *Georgia*, 20, 21.

3. So, to set aside the award on the ground of fraud on the part of one of the arbitrators, the proof of fraud should be distinct and clear. An award is intended by the law to be the end, not the beginning of litigation, and should not be disturbed but for strong reasons which are plainly shown to exist: 41 *Georgia*, 547 ; Westmore *vs.* Forbes, 13 East, 358.

4. Advancements by a guardian to his ward are necessarily connected with his trust and must be taken into the account, else how can there be a settlement between them? When " all matters and things growing out of or connected with such guardianship" are submitted to arbitration, the arbitrators necessarily look to the standing of the parties towards each other as individuals, the guardianship is at an end ; the settlement is now to take place between the parties as individuals. Certainly, the excess of authority in this case, if it be one, is not such an one as the guardian can complain of. If the notes given by his wards had not been taken into the account by the arbitrators, the award must necessarily have been against him for that much more. The course pursued by the arbitrators has lessened their finding against him to the amount of the notes, and insured payment to him by off-setting them against an equal amount due by him to his wards.

5. That neither error of judgment on the part of the arbitrators will justify a Court of equity in setting aside an award, nor mistake of law or fact, unless gross and palpable, is settled in the case of *Anderson vs. Taylor*, 41 *Georgia*, 10.

6. The mistake of Judge Reese in supposing himself selected as umpire, instead of one of three arbitrators, and his, therefore, taking no active part in the deliberations of the other two arbitrators, except where they differed, can only be taken advantage of by the defendant, if at all, upon the ground that this was misconduct on the part of one of the arbitrators. Conceding it to be so, which is very doubtful, the defendant must prove it by other testimony than that of Judge Reese. He is excluded upon the same principle that prevents a juror

Overby *et al. vs.* Thrasher.

from impeaching his verdict: 4 Car. and P., 327; Shelling *vs.* Farmer, 1 Strange, 646; Gordon *vs.* Mitchell, 3 Moore, 241, (4 E. C. L. R., 432;) Ellmaker *vs.* Buckley, 16 Serg. and R., 72; Campbell *vs.* Western, 3 Paige, 124; Newland *vs.* Douglass, 2 Johns., 62.

7. Defendant's plea attacked the award, both for mistakes of law and mistakes of fact. The questions of law were for the Court, the issues of fact alone for the jury, under the charge of the Court as to the law applicable to those issues; as, for instance, that to justify them in setting the award aside, on the ground of mistake in the amount found against the defendant, the mistake must be plainly apparent, and not amount to error of judgment only. In short, that the mistake must be such as would have induced the arbitrators themselves, upon the assumption that they acted uprightly, to alter their finding, had they discovered it, or had their attention been called to it at the time. "The error in fact must amount almost to misconduct:" Billing on Awards, #57, *n.* The mistake must be gross and palpable: 41 *Georgia,* 20.

The first thing to be considered by the jury is, whether such strong proof of fraud, accident or mistake, or any fact which would make the award illegal, as infancy of one of the parties to the submission, for instance, has been submitted to them to justify them in setting aside the award. If they find that issue in the negative, that ends their deliberations, and they should return their verdict in favor of the award. If in the affirmative, then the whole of the matters submitted to the arbitrators is open for their consideration and they should proceed to readjust the settlement between the parties; and, in order to enable them to do this, it is necessary, of course, for the parties, while submitting their evidence upon the issue as to whether the award should be set aside or not, to go further and introduce evidence upon the issues submitted to the arbitrators in order to enable the jury to pass upon them intelligently, should they find it necessary to reopen them. Equity having acquired jurisdiction, should retain it for the purpose of settling the whole controversy. A verdict merely setting

aside the award leaves the litigation at sea. Nothing is settled, and the party in whose favor the award was rendered has just cause of complaint and is entitled to a new trial, in order that he may have his rights passed upon.

Judgment reversed.