C. W. JACKSON & ASSOCIATES, INC. *v.*
DAVID L. BROOKS ET AL.

[No. 1271, September Term, 1979.]

*Decided June 16, 1980.*

The cause was argued before MOYLAN, MELVIN and WILNER, JJ.

*Richard W. Kiefer* and *Dorothy M. Beaman* for appellant.

*James E. Carbine,* with whom were *David M. Blum, Kevin G. Gralley* and *Weinberg & Green* on the brief, for appellees.

WILNER, J., delivered the opinion of the Court.

Appellant requested the Circuit Court for Baltimore County to modify certain provisions of an arbitration award, and the court did so. The modification made was not what appellant had in mind, or desired, however, and so it now claims that the court had no power to make the modification. We agree.

The controversy arises out of a construction contract dated October 6, 1972, under which appellant, the contractor, agreed to build a sales and service facility for appellee,[1] an automobile dealer. A host of complaints arose from the contract — charges and counter-charges involving appellant, one or more of its subcontractors, appellee, and appellee's architect and engineer. Pursuant to the architect's and construction contracts, and interim court rulings not especially relevant here, the disputes were submitted to arbitration in two stages. Stage I — that with which we are concerned in this proceeding — involved the claims and counterclaims between appellant and appellee; disputes involving the architect were reserved for Stage II.

The arbitration proceeding was protracted and lengthy. Hearings commenced in April, 1976, and, after a substantial hiatus, were concluded on October 15, 1977 — a year and a half later. The initial award was rendered on November 15, 1977, and was delivered to the parties within a day or two thereafter.

---

1. There are two appellees — David L. Brooks and Brooks Buick, Inc. Their interests in this proceeding appear to be identical, and, for purposes of clarity, we shall, except in the mandate, refer to them collectively in the singular, as appellee.

The arbitrator took as a starting point the unpaid contract price of $177,292.79, against which he considered the credits claimed by appellee for various errors and deficiencies on the part of appellant, and the amounts claimed by appellant for interest and extra work done. One of the claims made by appellee — the one that forms the basis of this proceeding — was that the ductwork on or about the roof of the building was improperly installed and, as installed, did not meet specifications. The arbitrator agreed that this was so, concluding that appellant "clearly failed to fully meet the specifications in regard to this work."

There were three complicating features with respect to this claim. First, the engineer employed by appellee's architect — Henry Adams, Inc. — had approved the installation, notwithstanding the deficiencies; second, appellee had obtained widely varying estimates as to the cost of correcting the problem, ranging from $750 to $15,400; and, third, the corrective measures had to be coordinated with other repairs and improvements required to be made to the roof. On the other hand, the subcontractor that was generally responsible for installation of the ductwork — Mills & Sons, Inc. — conceded that the installation was improper and agreed in writing to make all necessary repairs to the satisfaction of Adams *at its own expense.*

The arbitrator considered Mills' offer as "a fair manner in which to resolve the problem" provided that the work was done expeditiously — within 120 days — and was certified by Adams, and he adopted that remedy. Taking account of the complicating features noted above, he also provided (in relevant part):

"It will be necessary for Mills to coordinate its work with that of the roofer employed by Brooks and should it fail to do so, its work shall not be deemed satisfactory. Allowance has been made to Brooks for the cost of roofing work in Item A.1.b. *infra,* and, in order to obtain a fully satisfactory result, *Brooks will have to arrange with Adams or Mills to have whatever roofing work needs to be*

*done in conjunction with Mills' work carried out concurrently with it.*

\* \* \*

"Brooks shall be entitled to withhold $16,000 from the amount otherwise due Jackson under this Award until either (1) Mills declines to do the work as specified herein, in which case it shall so notify Brooks in writing within fifteen days of the date of this Award and Brooks shall be entitled to retain the $16,000 or (2) Mills performs the work within the time specified herein and Adams certifies that it is satisfactory in writing, at which time said amount shall be paid over to Jackson. Should Mills perform the work within the time allowed, but Adams fail or refuse to certify that it is satisfactory, Jackson shall have the right to apply either to the Circuit Court for Baltimore County or to this arbitrator for determination of whether Adams' certification was unreasonably withheld. Should the court or arbitrator find that such certification was unreasonably withheld, Jackson shall be entitled to receive from Brooks not only the principal sum of $16,000 but also interest thereon at the rate of 8% per annum, from the date of this Award plus his costs and attorneys' fees attendant upon the collection of such money." (Emphasis supplied.)

The arbitrator also ruled, of course, on the other matters in controversy; the problems with the ductwork and the roof were not the only issues attempted to be resolved in the award.

Appellee was the first to express dissatisfaction with the award; on December 14, 1977 (60 days after rendition of the award), it filed a petition in the Circuit Court for Baltimore County claiming that the arbitrator erred in failing to award damages to appellee and in awarding an amount to appellant for extended supervision costs. Appellee made no

complaint about that part of the award dealing with the roof or the ductwork; its petition was silent as to those matters. On January 4, 1978, appellant filed an answer to the petition in which it denied the substantive allegations and asked that the award be confirmed. It made no reference in its answer to the ductwork or roofing repairs or to those parts of the award concerning them.

Five months later, appellant reversed field. On June 14, 1978, it filed a petition, in the same proceeding, to modify the award with respect to the $16,000 withheld in order to secure the ductwork repairs. Appellant recited that (1) under the award, the subcontractor Mills was to coordinate its repair work with the work to be done by appellee's roofer, Bollinger; (2) the ductwork was to be completed by June 15, 1978;[2] and (3) Mills and appellant had been prevented from coordinating (and thus doing) the ductwork because of appellee's failure to advise them with respect to the roof repairs. As a result, appellant asked that the court modify the award by requiring appellee to pay the $16,000 withheld from appellant and discharging appellant and Mills from any further responsibility in connection with the ductwork.

By the time these petitions came on for hearing in May, 1979, Mills was no longer in business. It ceased operation in December, 1978. Appellee defended against appellant's request for payment of the $16,000 on the basis that, because neither Mills nor Adams were parties to the arbitration proceeding, the arbitrator had exceeded his authority in assigning them duties with respect to the ductwork. That part of the award, therefore, was alleged to be in error. Appellee asked that it be allowed to keep the $16,000 or, in the alternative, that appellant be ordered to make the ductwork repairs.

Evidence produced at the hearing established that, pursuant to the arbitration award, a meeting was held at appellee's office on January 4, 1978, in order to discuss plans for the coordinated repair of the roof and the ductwork.

---

2. The initial award required that the work be completed within 120 days (*i.e.,* by March 15, 1978). This was subsequently extended by an agreed modification to the award until June 15, 1978.

68

Present, among others, were representatives of the parties, Mills, Bollinger, and Adams. According to Mr. Robert Ford, then vice-president of Mills, it was understood that Bollinger would be doing the roof repairs, that Mills was to coordinate its work with Bollinger, that there appeared to be no problem in effecting such coordination, and that it was agreed to delay the work until the end of the spring rains. None of this was contradicted.

Ford said that he heard nothing more until April, 1978, when Bollinger called to arrange a meeting to discuss coordination of the work. Such a meeting was held in May, but Mills never heard from Bollinger thereafter. Ford said that Mills was ready and able to perform the work until it ceased operations in December, 1978 — five years after the building was completed, two years after the arbitration award.

Appellee's explanation for the delay, also uncontradicted, was that, after April, 1978, Bollinger lost interest in doing the roofing work on other than a "time and materials" basis, and appellee was unable to obtain another roofer to do the job at a price it was willing to pay.

Upon this evidence, the court concluded, in relevant part:

"Clearly, the arbitrator, in fashioning his award in this manner, allowed Jackson the opportunity to have the ductwork contractor perform the necessary repairs at no cost, and upon the failure to correct such defects, provided for damages to Brooks in the amount of $16,000.00. It is uncontroverted that the repair work has not been completed and that Mills is no longer available to perform the necessary repairs. The Court finds, therefore, that the Award shall be modified to allow Brooks to retain the $16,000.00 as damages resulting from the defective ductwork. Having found the Arbitrator's award to be in the alternative, repair or damages, the Court's action in this regard is clearly mandated under Courts and Judicial Proceedings Article, Section 3-223(3), as not

affecting the merits of the controversy. In so ruling, the Court specifically finds that any delay on the part of Brooks in failing to provide a roofing contractor was not of such magnitude as to defeat Brooks' entitlement to damages for the defective ductwork."

In this appeal, appellant contends, alternatively, that (1) the court's modification of the award affected the merits of the controversy, and was therefore precluded by Courts article, § 3-223 (b) (3), and (2) in any event, by its own inaction, appellee has forfeited its right to the $16,000. Appellee denies both of these assertions, but raises no other matter in defense of the court's action.

We agree that the court erred in making the modification, but for a much more fundamental reason than those asserted by appellant. Neither its petition nor the matter of repairs to the ductwork or roof was properly before the court.

The authority of a court to correct or modify an arbitration award is carefully spelled out, and limited, in Courts article, § 3-223. Subsection (a) thereof states: "A petition to modify or correct the award shall be filed within 90 days after delivery of a copy of the award to the applicant." Unless a party files an application to vacate, modify, or correct the award "within the time provided in §§ 3-222 and 3-223," the court "shall confirm the award." See § 3-227.

The 90-day time limit specified in § 3-223 (a) is not merely a helpful guideline. It is a mandatory requirement, a statute of limitations; and if the petition for modification is not filed within the 90 days, the court has no authority to consider it or the matters affirmatively presented by it.[3] See Nick-George Ltd. v. Ames-Ennis, Inc., 279 Md. 385 (1977), construing analogous time limits in § 3-222 (application to the arbitrator for modification) and § 3-224 (petition to court to

---

3. This would not, of course, exclude a party from properly raising matters after the expiration of 90 days, in defense to a petition to confirm, vacate, or modify that was itself timely filed. See, for example, Riko Enterprises, Inc. v. Seattle Supersonics Corp., 357 F. Supp. 521, 523 (S.D.N.Y. 1973), and cases cited therein, construing the Federal Arbitration Act, in particular 9 U.S.C. § 12; also Milwaukee Police Ass'n v. City of Milwaukee, 285 N.W.2d 119 (Wis. 1979).

vacate award) as mandatory; *also Bd. of Ed. of Charles Co. v. Ed. Ass'n,* 286 Md. 358, 366 (1979), reaffirming the mandatory character of those time limits. We see nothing in the statute that would warrant any different interpretation being given to the time limitation in § 3-223. *See Trustees of Boston & M. Corp. v. Massachusetts B.T.A.,* 294 N.E.2d 340 (Mass. 1973); *Emporium Area J.S.A. v. Anundson Const. & Bldg. Sup. Co.,* 166 A.2d 269 (Pa. 1960); and *cf. Witt v. Reinholdt & Gardner,* 587 F.2d 383 (8th Cir. 1978).

Appellant's petition was not filed within 90 days of delivery of the award; nor, as noted, was the issue presented in it raised in defense to appellee's petition or otherwise before the court. The only cognizable response to appellee's petition to modify was appellant's request that the award be confirmed. The court, therefore, had no authority to act upon appellant's untimely petition to modify, or upon the matter of the ductwork.[4]

> *Judgment pertaining to $16,000 damages for defective ductwork reversed; case remanded to Circuit Court for Baltimore County for entry of order dismissing appellant's petition for modification; costs to be divided equally between appellant and appellees.*

4. This produces a potential dilemma for parties to an arbitration proceeding. The time limits prescribed in §§ 3-222 — 3-224 all date from delivery of a copy of the award, and do not account for the contingency that an award, clear and complete on its face, may become ambiguous and incomplete because of subsequent events. This, of course, is what happened here; it was not until after the expiration of 90 days that the problem arose.

In this case, appellant had a remedy. It could, at some point between April and November, 1978 — *i.e.,* when it became clear that appellee was dragging its corporate feet in terms of securing a roofer and before the demise of Mills — have petitioned the court to confirm and enforce that part of the award implicitly directing appellee "to have whatever roofing work needs to be done in conjunction with Mills' work carried out concurrently with it." There is no time limit specified in § 3-227 with respect to a petition to *confirm* an award, and it seems to us that such a petition would have properly presented the matter to the court and permitted judgment to be entered thereon. *See* § 3-228.

We recognize, of course, that, subject to some other remedy found by appellant (upon which we shall not comment), the effect of our conclusion is to leave the parties precisely where the circuit court left them.