C. W. JACKSON & ASSOCIATES, INC. *v.*
DAVID L. BROOKS ET AL.

[No. 74, September Term, 1980.]

*Decided March 11, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Dorothy M. Beaman* and *Richard W. Kiefer* for appellant.

*James E. Carbine,* with whom were *Jefferson L. Mitchell* and *Weinberg & Green* on the brief, for appellees.

SMITH, J., delivered the opinion of the Court.

We are concerned in this case with an application of the Maryland Uniform Arbitration Act, Code (1974) §§ 3-201 to -234, Courts and Judicial Proceedings Article, to a building contract and the remedy of one party when the other party invokes equity jurisdiction but fails as to an uncontested portion of the award to do that which he has been directed to do by the arbitrator, such failure being at a time after which a party may seek to modify the award under the Act. We shall

find error on the part of the Court of Special Appeals which concluded in *C. W. Jackson & Associates v. Brooks*, 46 Md. App. 63, 415 A.2d 640 (1980), that the Circuit Court for Baltimore County was without power to decide the issue before it. We likewise shall find error in the decision reached by the trial court.

C. W. Jackson & Associates, Inc., is a building contractor. In 1972 it and David L. Brooks entered into a contract for the construction of a new car sales and service facility in Baltimore County. Brooks Buick, Inc., was also involved. Disputes arose between the parties and litigation ensued. Ultimately an agreement was reached to submit the matter to arbitration. Donald Rothman, Esq., of the Baltimore bar, was the arbitrator. Central to the issue here is the roof and certain ductwork which was to be installed upon it, although there were other issues before the arbitrator. On this subject the arbitrator said:

> Jackson clearly failed to fully meet the specifications in regard to this work. Owner's agent, Henry Adams, Inc., apparently failed to pick this up at the time (although it should have done so), and approved the installation. However, it is not clear that the conditions now complained of, that is, sagging and leaking, are in fact due to those failures to meet specifications which have been pointed out, or due to failure to meet specifications at all.

He found "a tremendous disparity in the bids submitted for correction." One contractor desired "$15,400 to *replace* insulation on all ductwork," while another "quote[d] $750 for additional coating on all rooftop duct insulation to 'assure a watertight seal' ...." (Emphasis by the arbitrator.) He referred to yet other bids in between those figures and then further observed:

> The original subcontractor, Mills & Sons, Inc., has formally offered to make the repairs to the ductwork which Mr. Romine of Henry Adams, Inc. (Adams) specified as defects in his letter of April 29,

1976, to the "complete satisfaction and approval" of Adams, and to reseal any joints not sealed with four inch wide vapor barrier tape where these joints are not so sealed, and to recoat the entire exposed duct surface on the roof at no expense to Brooks, all as specified and set forth in Jackson's Exhibit JJJ.

Although Brooks does not want Jackson or its subcontractor to do the work, I believe this is a fair manner in which to resolve the problem; provided, (1) it is done expeditiously at a time mutually agreeable to Adams and Mills within 90 days of the date of this award, or at a later date if weather prevents doing the work properly within 90 days, but in no event later than 120 days from the date of this award, and (2) it is certified by Adams as satisfactory.

The arbitrator specified under what circumstances the work by Mills was to be deemed satisfactory. He then commented:

It will be necessary for Mills to coordinate its work with that of the roofer employed by Brooks and should it fail to do so, its work shall not be deemed satisfactory. Allowance has been made to Brooks for the cost of roofing work in Item A.1.b. *infra,* and, in order to obtain a fully satisfactory result, Brooks will have to arrange with Adams or Mills to have whatever roofing work needs to be done in conjunction with Mills' work carried out concurrently with it.

The seeds of this controversy were sown in the concluding portion of the award in which he stated:

Brooks shall be entitled to withhold $16,000 from the amount otherwise due Jackson under this Award until either (1) Mills declines to do the work as specified herein, in which case it shall so notify Brooks in writing within fifteen days of the date of this Award and Brooks shall be entitled to retain the $16,000, or (2) Mills performs the work within

the time specified herein and Adams certifies that it is satisfactory in writing, at which time said amount shall be paid over to Jackson. Should Mills perform the work within the time allowed, but Adams fail or refuse to certify that it is satisfactory, Jackson shall have the right to apply either to the Circuit Court for Baltimore County or to this arbitrator for determination of whether Adams' certification was unreasonably withheld. Should the court or arbitrator find that such certification was unreasonably withheld, Jackson shall be entitled to receive from Brooks not only the principal sum of $16,000 but also interest thereon at the rate of 8% per annum, from the date of this Award plus his costs and attorneys' fees attendant upon the collection of such money.

The award was made on November 15, 1977. On December 14, 1977, Brooks invoked the provisions of Code (1974), §§ 3-223 and 3-224, Courts and Judicial Proceedings Article, requesting the Circuit Court for Baltimore County to vacate, modify or correct the award of arbitration. As Judge Wilner pointed out for the Court of Special Appeals, 46 Md. App. at 66-67, Brooks "made no complaint about that part of the award dealing with the roof or the ductwork; its petition was silent as to those matters." Brooks' petition asked the equity court to "[a]ssume continuing jurisdiction of the subject matters . . . ." Jackson answered on January 4. It denied the allegations of the petition and requested that the award be confirmed. Since no reference was made in the petition to the ductwork or roofing repairs, the answer had no reason to make reference to either.

On the same day that the answer was filed the parties met for the purpose of arranging for the coordination of the roof and ductwork repair. They concluded that it would be impossible to schedule this work within the time limit specified in the award. Therefore, they requested the arbitrator to extend the time limits. On January 20 he passed an order reciting this fact and stating:

> Accordingly, provided all parties so stipulate and agree in writing, the time for certification that the duct work on the roof and its covering referred to at page 9, I A 1 (a), of the Award of November 15, 1977, is hereby extended to June 15, 1978.

In April 1978 Mills and a roofing contractor procured by Brooks met on the job. No work was done. Brooks later testified that he and the roofing contractor could not agree upon a price.

On June 14, 1978, Jackson filed what was styled as a petition to modify the award of arbitration. It will be noted that this was one day prior to the deadline set by the arbitrator's extension of time. The petition recited that which Brooks concedes to be true, namely that Brooks had not proceeded with repair of the roof. It was claimed "[t]hat though Jackson and Mills ha[d] repeatedly sought a decision from Brooks as to the extent of the roof to be repaired or replaced, Brooks ha[d] failed and refused to so advise," thus "prevent[ing Jackson and Mills] from performing the duct work due entirely to the failure of Brooks to comply with the terms of the Award." Accordingly, Jackson requested that the award be modified to pay Jackson the $16,000 then being withheld and that Jackson and Mills "be relieved of any further responsibility for the performance of the duct work . . . ." No answer to that petition was ever filed.

It would appear that efforts to find a satisfactory roofing contractor continued in the interim between the filing of Jackson's petition and the hearing held almost a year later. These efforts were unsuccessful, however. Mills went out of business and into receivership in that period.

When the matter came on for hearing in the Circuit Court for Baltimore County, there were three issues regarded by all as before the court. Two of them were decided adversely to Brooks, from which no appeal was taken. On this issue the trial judge said in pertinent part:

> Clearly, the arbitrator, in fashioning his award in this manner, allowed Jackson the opportunity to

have the ductwork contractor perform the necessary repairs at no cost, and upon the failure to correct such defects, provided for damages to Brooks in the amount of $16,000.00. It is uncontroverted that the repair work has not been completed and that Mills is no longer available to perform the necessary repairs. The Court finds, therefore, that the Award shall be modified to allow Brooks to retain the $16,000.00 as damages resulting from the defective ductwork. Having found the Arbitrator's award to be in the alternative, repair or damages, the Court's action in this regard is clearly mandated under Courts and Judicial Proceedings Article, Section 3-223 (3), as not affecting the merits of the controversy. In so ruling, the Court specifically finds that any delay on the part of Brooks in failing to provide a roofing contractor was not of such magnitude as to defeat Brooks' entitlement to damages for the defective ductwork.

Jackson appealed to the Court of Special Appeals. That court held that since "[Jackson's] petition was not filed within 90 days of delivery of the award; nor . . . was the issue presented in it raised in defense to [Brooks'] petition or otherwise before the court[,] . . . [t]he court . . . had no authority to act upon [Jackson's] untimely petition to modify, or upon the matter of the ductwork." *Id.* 46 Md. App. at 70. We granted Jackson's petition for the writ of certiorari.

Sections 3-201 to -234, Courts and Judicial Proceedings Article, constitute the Maryland Uniform Arbitration Act. In *Frederick Contr. v. Bel Pre Med,* 274 Md. 307, 314, 334 A.2d 526 (1975), Judge Singley referred for the Court to the "scholarly opinion" by Judge Davidson for the Court of Special Appeals in *Bel Pre Med v. Frederick Contr.,* 21 Md. App. 307, 315-20, 320 A.2d 558 (1974), which he said "traced the history of arbitration in this country, . . . culminat[ing] in the Uniform Arbitration Act . . ., enacted by our General Assembly by Chapter 231 of the Laws of 1965, Code (1957, 1968 Repl. Vol.) Art. 7, §§ 1-23," repealed by Chapter 2, § 2

of the Acts of 1973, First Special Session, effective January 1, 1974, and reenacted as our present Maryland Uniform Arbitration Act. Court is defined in § 3-201 (b) as meaning "a court of equity."

A request to a court for correction or modification of an award is required by § 3-223 (a) to be filed within ninety days after delivery of a copy of the award to the applicant. It was this section to which the Court of Special Appeals had reference when it referred to Jackson's petition as not having been filed within ninety days of delivery of the award. A court may modify the award under that section if there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award; the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or the award is imperfect in a matter of form, not affecting the merits of the controversy. If the petition to correct or modify is granted, then § 3-223 (c) requires the court to modify or correct the award to effect its intent and to confirm the award as modified or corrected. Otherwise, it is to confirm the award as made.

The matter of vacating an award is covered under § 3-224. A petition to vacate must be filed within 30 days after delivery of a copy of the award to the petitioner unless the petition alleges corruption, fraud, or other undue means in which case it shall be filed within thirty days after the grounds become known or should have been known to the petitioner. The court is to vacate an award if it was procured by corruption, fraud, or other undue means; there was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party; the arbitrators exceeded their powers; the arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing contrary to the provisions of § 3-213 concerning hearing and notice as to prejudice substantially

the rights of a party; or there was no arbitration agreement as described in § 3-206, the issue was not adversely determined in proceedings under § 3-208, relative to stay of arbitration, and the party did not participate in the arbitration hearing without raising the objection.

In *Parr Construction Co. v. Pomer,* 217 Md. 539, 543, 144 A.2d 69 (1958), Chief Judge Brune stated succinctly for this Court, "Arbitration is favored for the settlement of disputes. See *O'Ferrall v. De Luxe Sign Co.,* 158 Md. 544, 552, 149 A. 290 [(1930)], and cases therein cited." To similar effect see the extensive discussion by Judge Davidson for the Court of Special Appeals in *Bel Pre,* 21 Md. App. at 307. Arbitration is a matter of contract. In this case the parties contracted when they agreed to submit their dispute to the arbitrator for resolution. In the absence of contract there was no way for the matter to go to arbitration. Therefore, the arbitrator's decision to the extent that it was not disputed became a contract between the parties, as was pointed out by Judge Barnes for the Court in *Chillum v. Button & Goode,* 242 Md. 509, 517, 219 A.2d 801 (1966), a case arising prior to the adoption of the Maryland Uniform Arbitration Act. Thus, the remedy of Jackson ordinarily would be a suit at law for breach of contract. However, another principle of law comes into play here. That principle is that once an equity court has obtained jurisdiction it retains that jurisdiction to adjust and determine all the rights of the parties to the proceeding. Thus, when a court of equity has assumed jurisdiction, ordinarily it will retain it for all purposes, deciding all the issues raised by the subject matter of the dispute between the parties and awarding complete relief, even as to matters over which it would not have taken jurisdiction originally, although the principle will not be extended to an unrelated controversy in which any of the parties to the original litigation is involved. See, e.g., *Charles Co. Broadcasting v. Meares,* 270 Md. 321, 329, 311 A.2d 27 (1973); *Bowie v. Ford,* 269 Md. 111, 124, 304 A.2d 803 (1973); *Auto. Retailers v. Evans Cig. Serv.,* 269 Md. 101, 105, 304 A.2d 581 (1973); and *Hardisty v. Kay,* 268 Md. 202, 211-12, 299 A.2d 771 (1973). This includes the rendering of a money decree arising out of

the issues litigated, *Hardisty* at 212; *Oregon Ridge v. Hamlin,* 253 Md. 462, 469-70, 253 A.2d 382 (1969), and *Stirn v. Segall,* 251 Md. 240, 245, 247 A.2d 252 (1968). It also includes the right to grant relief to the defendant. *Vulcan, Inc. v. Md. Home Imp. Comm'n,* 253 Md. 204, 211-12, 252 A.2d 62 (1969). Under that principle we hold that the trial judge did have authority to decide the issue now before us. This holding is consistent with the holdings in *Overby v. Thrasher,* 47 Ga. 10, 23 (1872); *Oregon-Wash. etc. Co. v. Spokane P. & S. Ry.,* 83 Ore. 528, 555, 163 P. 600 (1917); *Gregory v. Pawtucket Mut. Fire Ins. Co.,* 58 R.I. 434, 442, 193 A. 508 (1937); and *Coons v. Coons,* 95 Va. 434, 441, 28 S.E. 885 (1897). Each of those cases involved arbitration but none of them arose under the Uniform Arbitration Act. Some are cited in 5 Am. Jur. 2d *Arbitration and Award* § 188 (1962), for the proposition, "In a suit to set aside an award where the defendant, by answer or cross bill, prays for general equitable relief, in case the award is held invalid the whole controversy may be settled by the court."

We disagree with the determination by the trial judge here. The arbitrator found some work done by Mills, the subcontractor for Jackson, which did not meet specifications, although it had been accepted by the agent of Brooks as having met those specifications. Mills apparently was much shocked at this finding. Then Mills offered to do the necessary work at no expense to Jackson or to Brooks. There was a wide variance as to the estimated cost of the work between the low estimate of $750 and the high estimate of $15,400. It must be remembered that the arbitrator said, "[I]t is not clear that the conditions now complained of, that is, sagging and leaking, are in fact due to those failures [by the work of Mills] to meet specifications which have been pointed out, or due to failure to meet specifications at all." It was under all those circumstances that the arbitrator fashioned the remedy which we have previously quoted. It will be recalled that under it Brooks was entitled to withhold the sum of $16,000 from the amount due Jackson under the award until Mills declined to do the work as specified in which case Jackson was to notify Brooks in writing within fifteen days and

Brooks was then to be entitled to retain the $16,000 or until Mills performed the work within the time specified and Brooks' agent, Adams, certified in writing that the work was satisfactory. At that time this sum was to be paid over to Jackson. The award then went on to provide for the contingency that for one reason or another Adams might fail or refuse to certify the work as satisfactory. This is not a provision, as stated by the trial judge, "for damages to Brooks in the amount of $16,000.00" upon Mills' failure to correct such defects. It is a typical construction contract provision for withholding a stated sum at the completion of work on a project until the supervisor such as an architect or engineer is satisfied that the work meets all the specifications of the contract. The arbitrator determined that Jackson was entitled to the sum of $16,000 subject only to Mills' doing certain things. Mills was ready, willing and able to perform during the period specified by the arbitrator for performance, but Brooks breached the contract by making performance impossible. The trial judge erred as a matter of law in his determination that it was Jackson who had breached the contract, hearkening back to the original building contract rather than examining the contract before the court as a result of the arbitration award. What we have is the same situation which would prevail if Brooks had forbidden Mills to come on his property. Jackson is entitled to the $16,000.

Jackson seeks not only the full $16,000, but interest at the rate of eight percent from the date of the award plus his costs and attorney's fees dependent upon collection of the money as specified in the award. However, the award only specified that he was to have interest from the date of the award and attorney's fees in the event the arbitrator or the Circuit Court for Baltimore County determined that although Mills had done the work that Brooks' agent had *unreasonably* withheld a certification that the work had been performed in accordance with the specifications. That situation did not arise. As we see it, Jackson is entitled to a judgment against Brooks for $16,000 with interest from September 19, 1979,

the date of the decree in the Circuit Court for Baltimore County.

> *Judgment of the Court of Special Appeals modified and case remanded to that court for passage of an order reversing the judgment of the Circuit Court for Baltimore County and further remand to that court for entry of a decree in accordance with this opinion; appellees to pay the costs.*