Matthew M. Levy, J.
This action was instituted by the plaintiff in August, 1955 and is grounded upon two causes, in substance as follows: (1) to recover the sum of $9,500 representing the balance due on a $10,000 promissory note dated February 20, 1952 alleged to have been given by the defendants to the plaintiff as evidence of a loan made by the plaintiff to the defendants, and (2) to recover $16,067.66, representing payments made by the plaintiff to the defendants over and above the amounts allegedly due from the plaintiff to the defendants for work, labor and services rendered by the defendants for the plaintiff during the years 1952 and 1953. The defendants have not as yet answered the complaint. Instead, invoking section 1451 of the Civil Practice Act, they ask for a stay of the plaintiff’s proceedings in the action, alleging, in substance, that the claims asserted by the plaintiff arise from the transactions between the parties during 1952 and 1953, which were governed by the terms of an agreement containing an arbitration clause, and that necessarily therefore such claims are subject to arbitration and not legal action.
*343 It appears from the petition in support of the instant application (and there is no substantial dispute) that: The plaintiff, a wholesale dealer in the ladies’ coat and suit industry, is a member of the Merchants’ Ladies’ Garment Association, Inc. The defendants are manufacturing contractors in that industry and are members of the American Cloak and Suit Manufacturers’ Association, Inc. These associations are parties to an agreement entered into in behalf of themselves and of all of their respective members. The term of the agreement was from August 10, 1951 to May 31, 1954. It pertained to the nature of the business in which the plaintiff and the defendants are involved, referred to the general stability of the industry, and provided for the fixing of prices of garments manufactured by a member of one of the associations for a member of the other. Under paragraph “ Seventh ” of the agreement, certain minimum prices were provided for, based on the contractor’s actual costs, and, in accordance with this provision, the fixing of prices prior to the manufacture of goods involved, was only temporary — the prices were to be finally adjusted at a later date. During 1952 and 1953, the defendants worked as a contractor for the plaintiff in the making of ladies’ clothing, and, in connection therewith, the plaintiff advanced certain funds to the defendants against moneys to become due them for the work being done by them. The temporary prices were arranged between the parties, as is customary in the trade, subject to adjustments on rates as determined by the collective contract.
The defendants assert, and it is disputed by the plaintiff, that the first cause of action in the complaint (in which the plaintiff sues the defendants upon a promissory note, in the face amount of $10,000 — on which a balance of $9,500 is alleged to be due — claiming that this was an independent loan to the defendants) is really on a loan which was made by the plaintiff to the defendants to meet their payrolls and other obligations, pending delivery of the garments manufactured by the defendants for the plaintiff, and that the only reason the plaintiff had requested and received the note was to aid it in its dealings with its bank for credit purposes; and that the second cause of action in the complaint (in which the plaintiff sues the defendants for alleged overpayments in the sum of $16,067.66) is really for advances pending adjustments in prices as provided for in the collective agreement; that this method of doing business between contractors and manufacturers in the industry of which the parties are members is customary and necessary; that the amount of indebtedness based on advances over prices for goods delivered could be determined only after the final *344 prices were fixed; that on many occasions, the defendants tried to get the plaintiff to confer with them finally to adjust the prices charged, but that they were put off with various excuses; and that an adjustment based upon the actual figures involved would show that the plaintiff is indebted to the defendants for about $41,000, rather than the reverse as claimed by the plaintiff.
Paragraph “Fourteenth” of the agreement sets forth at great length and with great particularity the method to be followed in adjusting and arbitrating disputes. What is subject to arbitration is stated in very broad, comprehensive and all-inclusive terms: ‘ ‘ All complaints, disputes or grievances arising between the parties hereto, involving questions of interpretation or application of any clause of this agreement, or any acts, conduct or relations between the parties or their respective members, directly or indirectly ’ ’. The agreement also provides in effect that the parties intend and agree that the adjustment and arbitration proceedings therein set up are to be the exclusive means of determining all such disputes, complaints and grievances and that ‘ [n] o party shall institute any proceedings in a court of law or equity other than to enforce the decision and award of the Impartial Chairman ’ ’ and that “ [t]his provision shall be a complete and bona fide defense to any action or proceeding instituted contrary to the terms hereof.”
Parties to a valid contract may agree that any and all controversies shall be submitted to arbitration, and, if they do, the courts of New York will give effect to their intention (Matter of River Brand Rice Mills v. Latrobe Brew. Co., 305 N. Y. 36; Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76; Knolls Coop. Section No. 1 v. Hennessy, 3 Misc 2d 220). In passing upon this application, therefore, I may not consider the merits of the controversy. The only questions to be determined here are (1) whether there was a contract to arbitrate; (2) whether there is in fact a dispute covered by the terms of the contract; and (3) whether there was a refusal to arbitrate (Matter of Crosett [Mount Vernon Housing Auth.], 275 App. Div. 1051, motion for reargument and for leave to appeal to Court of Appeals denied 276 App. Div. 848). In this case, I am of the opinion that the questions so propounded must be answered in the affirmative.
So far as the first question is concerned, the making of a valid contract to arbitrate has, in effect, been conceded. With respect to the second question, the papers indicate the existence of a ’olalrq or dispute which falls within the scope of the arbitration clause. The agreement provided that all complaints, dis *345 putes or grievances between the parties should be submitted to arbitration and this would appear clearly to include the present dispute — both as to prices and as to whether the note and the advances were part of the transaction or independent of it. And the agreement goes further — it relegates to arbitration not only all “ questions of interpretation or application of any clause of this agreement ”, but also of “ any acts, conduct or relations between the parties or their respective members, directly or indirectly ’ ’. The language of the contract thus makes assurance doubly sure that it was the intent of the parties that the determination as to whether a disputed claim, arising subsequent to the execution of the contract, comes within the purview of the arbitration clause in the contract, is a matter which itself must be determined by the arbitration machinery set up in the contract (Matter of Potter Co. [Miles Metal Corp.], 2 Misc 2d 515, 517-518, and cases cited therein, affd. 2 A D 2d 816; cf. Matter of Wenger & Co. v. Propper Silk Hosiery Mills, 239 N. Y. 199). Respecting the third question, the act of the plaintiff in bringing this action upon a claim arbitrable under the agreement, in the first instance, without first demanding arbitration, constitutes, in effect, a refusal to arbitrate.
It is urged by the plaintiff that — as a matter of law — the defendants have waived arbitration and are estopped from requiring it now. I shall consider separately each ground presented for the claimed waiver and estoppel.
The plaintiff asserts that, in fixing its own selling prices long ago, the plaintiff, by necessity, had to know the defendants’ charges and that the defendants’ invoices — admittedly originally only tentative and specifying prices therein but temporarily— became final, because the plaintiff did not promptly claim price revision or demand arbitration thereon, and by thus unreasonably delaying its complaint, a dispute should not now be recognized to exist. I am unable to agree with the contention thus made by the plaintiff. In the first place, the defendants counterallege that, in fact, they did promptly ask for price adjustment conferences, but that the plaintiff refused them. And, secondly, the offensive in instituting proceedings for arbitration lies with the aggrieved party, and it was the plaintiff who contended, and still does, that it had been wronged (cf. Guerra v. Krueger Corp., 4 Misc 2d 696). While unreasonable delay in invoking section 1451 of the Civil Practice Act — after an action is instituted — will constitute waiver (Nagy v. Arcas Brass & Iron Co., 242 N. Y. 97), the defendants in this case did not waive the arbitration agreement by not bringing proceedings to enforce it under section 1458 of the Civil Practice Act (cf. *346 Matter of Zimmerman v. Cohen, 236 N. Y. 15). The defendants were not under an obligation to act until there was an action brought — and then they must within a reasonable time present the arbitration agreement as a bar (Matter of Haupt v. Rose, 265 N. Y. 108). That is what the defendants have done here. They have not engaged in any acts inconsistent with the arbitration agreement which would constitute a waiver thereof (cf. American Reserve Ins. Co. v. China Ins. Co., 297 N. Y. 322).
The factual basis for the claimed waiver and estoppel here is such that whether there should or should not be a determination of the merits of the controversy is an issue for the arbitration tribunal to dispose of. In Matter of Potter Co. (Miles Metal Corp.) (2 Misc 2d 515, 517, affd. 2 A D 2d 816, supra), I held that “ [a]s there has here been a binding contract calling for arbitration of all controversies, any question of performance or compliance with its terms affects the merits and is to be decided by the arbitrators ”. In the instant case, I hold that any question of waiver and estoppel — dependent, as it is, upon the facts as to performance or compliance with the terms of the contract — is also, under this arbitration clause, to be decided by the arbitrators. “In other words, all acts subsequent to the making of the agreement which raise issues of fact or law are within the arbitrators’ jurisdiction ” (Matter of Potter Co. [Miles Metal Corp.], supra).
The plaintiff argues further that, under the contract, the time within which the defendants may make claim and demand arbitration has long since expired. The clause upon which reliance is placed by the plaintiff is clause (d) of paragraph “ Eleventh” of the agreement, which reads as follows: “No claim of any kind or nature shall be made by a member of the Merchants ’ Association after five (5) days following the delivery of garments by such member of the American Association to the member of the Merchants’ Association”. It seems to me that the shoe is truly on the other foot. It is the plaintiff who is a member of the Merchants’ Association, and clause (d) of paragraph 11, if applicable, is a limitation as to the time when the plaintiff — not the defendants- — -may proceed.
Counsel have cited no clause in the contract limiting the time within which arbitration may be sought, and, reading the agreement in its entirety, I myself have found no such provision. But, assuming that such a stipulation is there and that I have overlooked it, that would avail the plaintiff nothing. An agreement for arbitration makes for an exclusive remedy; and, even where one of the parties to the agreement has failed to avail himself of the right to arbitrate by neglecting to make timely *347 demaad therefor (Ott v. Metropolitan Jockey Club, 282 App. Div. 946, affd. 307 N. Y. 696), the courts are not thereby warranted in assuming jurisdiction, except to determine whether the contractual time limit is ambiguous or unreasonably harsh when applied to the facts (Matter of River Brand Rice Mills v. Latrobe Brew. Co., 305 N. Y. 36, supra). Thus it is that even if the plaintiff were unable now to demand arbitration, that would not deprive the defendants of their right to a stay of proceedings of the action at law, in pursuance of section 1451.
Accordingly, the motion by the defendants to stay all proceedings in this action until arbitration be had between the parties is granted. Settle order.