LANE–TAHOE, INC., a Nevada Corporation, Appellant, *v.* KINDRED CONSTRUCTION COMPANY, INC., a Nevada Corporation, and DAVIS WADE KINDRED, Respondents.

No. 7602

LANE–TAHOE, INC., a Nevada Corporation, *v.* McKENZIE CONSTRUCTION, INC., a Nevada Corporation, Respondent.

No. 7670

June 11, 1975 536 P.2d 491

*John J. McCune, Ltd.,* of Reno, for Appellant.

*Breen, Young, Whitehead & Hoy,* and *Milos Terzich,* of Reno, for Respondent Kindred Construction Company, Inc.

*Woodburn, Wedge, Blakey, Folsom & Hug* and *Robert Cox,* of Reno, for Respondent McKenzie Construction, Inc.

## OPINION

By the Court, THOMPSON, J.:

These consolidated appeals are from orders of the district court, entered in lien foreclosure proceedings, denying motions to compel the arbitration of disputes arising under construction ·contracts.

The appellant in each instance, Lane-Tahoe, Inc., as owner, entered into written contracts with respondents, McKenzie Construction, Inc., and Kindred Construction Co., respectively for land site preparation and for the construction of condominiums. Each contract contains provisions for the arbitration of claims and disputes arising thereunder. McKenzie and Kindred seek court foreclosure of lien claims timely filed. Lane-Tahoe sought unsuccessfully to stay court action and to compel arbitration in lieu thereof. These appeals followed. We first must resolve a motion to dismiss tendered by Kindred.

1. Kindred filed a statement of facts constituting its claim of lien [NRS 108.239] in a lien foreclosure action commenced by two of its subcontractors, Incline Glass and Cal-Vada Cabinet Company, against Lane-Tahoe. Since Lane-Tahoe's contract with Kindred provided for the arbitration of disputes between them, Lane-Tahoe moved to stay court action and to compel arbitration. As noted, that motion was denied. We are asked to dismiss Lane-Tahoe's appeal from the order denying arbitration because NRCP 54(b) provides that when multiple parties are involved, the court may direct the entry of final judgment "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." The record contains no such express determination and direction. Whether Rule 54(b) has application to this case is the point to be decided.[1]

The motion to compel arbitration was offered pursuant to NRS 38.045 of the Uniform Arbitration Act. Section 1 thereof provides that "on application of a party showing an agreement described in NRS 38.035, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. . . ." And, section 4 thereof reads that "any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section. . . . When the application is made in such action or proceeding, the order for arbitration shall include such stay." Finally, NRS 38.205 (1)(a) of the Act expressly provides that "an appeal may be taken from an order denying an application to compel arbitration made under NRS 38.045."

A Rule 54(b) determination is not necessary if a statute or rule expressly authorizes an appeal. In DeLuca Importing

---

[1]We have examined other grounds for the motion to dismiss and find them to be without merit.

Co. v. Buckingham Corp., 90 Nev. 158, 520 P.2d 1365 (1974), we ruled that an appeal may be taken from an order denying a motion for an injunction, NRAP 3A(b)(2), without any express determination that there is no just reason for delay. See also: Bernhardt v. Polygraphic Company of America, 235 F.2d 209, 211 (2d Cir. 1956); Atlantic Richfield Co. v. Oil, Chemical & A. Wkrs. Int. U., 447 F.2d 945, 947 (7th Cir. 1971); Thompson v. Trent Maritime Company, Ltd., 343 F.2d 200, 204 (3rd Cir. 1965).

Kindred's motion to dismiss is denied. We turn to consider the merits of the consolidated appeals.

2. The contractual provisions for arbitration are, in each instance, identical and, in relevant part, are quoted below.[2] Moreover, each contract states that it "shall be governed by the law of the place where the Project is located." The project is located in Washoe County, Nevada. Consequently, the arbitration provisions of the contracts are to be read in conjunction with the Uniform Arbitration Act of this state.

The underlying purpose of the Act is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually. This is evident from a mere reading of the Act. A contract to submit controversies to arbitration, with certain exceptions, is valid, enforceable, and irrevocable. NRS 38.035. Any action or proceeding involving an issue subject to arbitration shall be stayed if an application therefor has been made. NRS 38.045(4). Subject to the specified exceptions of NRS 38.145 and 38.155, the court shall confirm

---

[2]"All claims, disputes and other matters in question arising out of, or relating to, this contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law of any court having jurisdiction thereof."

"Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made . . . within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."

the award of the arbitrators. NRS 38.135. The whole tenor of the Act favors arbitration when the parties have agreed to that method of settling disputes between them. The respondents Kindred and McKenzie acknowledge this to be so. However, they each insist that the owner, Lane-Tahoe, waived its right to arbitration by failing to file written notice of its demand therefor within a reasonable time as required by the contract provision quoted in footnote 2, and the respondent McKenzie further urges that Lane-Tahoe's motion to compel arbitration is barred by limitations. These contentions formed the basis for the district court orders denying arbitration.

Although Lane-Tahoe did not file a written demand for arbitration, neither did McKenzie nor Kindred. All had agreed, however, to settle their disputes in that manner. In view of that agreement, one of the contracting parties was obliged to initiate the arbitration process. Absent express language in the contract placing the initial burden on either party, that responsibility properly rests with the party seeking relief. Mamlin v. Susan Thomas, Incorporated, 490 S.W.2d 634, 639 (Civ.App. Tex. 1973); Nordenstrom v. Swedberg, 143 N.W.2d 848, 857 (N.D. 1966); Klein Coat Corp. v. Peretz, 153 N.Y.S.2d 92, 97 (Sp.Ct. 1956). He should not be free to litigate in the courts simply because his opponent did not demand arbitration. This is not to say that the opponent could not have initiated arbitration. We hold only that the burden to initiate arbitration is upon the party seeking relief and does not shift to the opponent absent a clear waiver of arbitration by the opponent. The parties seeking relief in these cases, that is, payment for the claimed balances due for their work, are the contractors McKenzie and Kindred.

This view is compatible with NRS 38.045(1) which explicitly provides that on application of a party showing an agreement to arbitrate and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. The thrust of the statute is to compel the contracting parties to honor their promises. The agreements to arbitrate are admitted. McKenzie and Kindred, who seek relief, did not initiate arbitration. Instead, they commenced court action. This, we think, is a refusal to arbitrate within the intendment of NRS 38.045 (1). Cf. Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 128 F.2d 411, 413 (7th Cir. 1943).

The record contains nothing to suggest a waiver of arbitration by Lane-Tahoe. Waiver requires conduct which speaks the intention clearly. United Assn. Journeymen v. Stine, 76 Nev. 189, 199, 351 P.2d 965 (1960). The contracting parties did not discuss waiving arbitration. The passing of time after the disputes arose, without more, does not point to a waiver of the arbitration provisions by Lane-Tahoe, when the duty to initiate the arbitration process rested upon the claimants McKenzie and Kindred. There is nothing to show that Lane-Tahoe did not intend to rely upon arbitration should the claimants press their claims. When the lien foreclosure actions were commenced, Lane-Tahoe moved to stay them, and for arbitration. Had Lane-Tahoe answered to the merits instead of moving for arbitration, a waiver could be found. Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 128 F.2d 411, 413 (7th Cir. 1942). This, it did not do. Rather, it moved for the relief explicitly authorized by NRS 38.045 (1)(4). A waiver of arbitration by Lane-Tahoe did not occur. A. D. Hoppe Company v. Fred Katz Construction Co., 57 Cal.Rptr. 95, 100 (Cal.App. 1967).

3. The contracts provide that the demand for arbitration shall be made within a reasonable time and in no event "after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations." With regard to the McKenzie controversy, it is urged that the quoted language bars arbitration since Lane-Tahoe did not file its motion to compel arbitration until more than six months after McKenzie had recorded its claim of lien.[3] It is Lane-Tahoe's position that the applicable period of limitation is that governing contracts,[4] and that its right to move for arbitration pursuant to the express authorization of NRS 38.045(1) is not precluded.

The mechanics' lien law does not impair the right to sue for the debt claimed to be due. NRS 108.238; State v. Breen,

---

[3]NRS 108.233(1): "No lien . . . binds any building, mining claim, improvement or structure for a longer period than 6 months after such lien has been recorded, unless: (a) Proceedings are commenced in a proper court within that time to enforce the same; . . . ."

[4]NRS 11.190(1): "Within 6 years:

(a) . . . .

(b) An action upon a contract, obligation or liability founded upon an instrument in writing. . . ."

41 Nev. 516, 521, 173 P. 555 (1918); State v. Moran, 42 Nev. 356, 358, 176 P. 413 (1919). McKenzie sought not only to foreclose its lien, but alternatively, to recover money for an alleged breach of contract. Since the underlying dispute concerns whether McKenzie or Lane-Tahoe breached contractual duties, the contract language must mean that the "applicable statute of limitations" is the one governing "an action upon a contract."

4. The district court intimated that arbitration is not suited to a case where a lienor-contractor enjoys the statutory remedy provided by the mechanics' lien law.

We find no authority holding that arbitration is inappropriate when the parties to a construction contract have agreed to that method of settlement. Neither the mechanics' lien law nor the arbitration act discloses a legislative intention to preclude the voluntary arbitration of disputes arising out of a construction contract. The contractors before us have not attempted to demonstrate how or why they would be prejudiced by having the rights settled by the arbitration process to which they have agreed.[5]

We conclude that a valid arbitration agreement should be enforced as between the parties hereto.

Reversed, with direction to stay the lien foreclosure proceedings of McKenzie and Kindred, and to enter an order in each instance granting arbitration.

ZENOFF and MOWBRAY, JJ., concur.

GUNDERSON, C. J., and BATJER, J., dissenting:

With all respect, we believe the majority's resolution of the above cases is incorrect.

We believe that, as the district court perceived, staying lien

[5]Labor and material suppliers are not permitted a lien on public buildings or public works of the United States. Consequently, the Miller Act was enacted to give such suppliers needed protection. It provides for furnishing a payment bond in all government construction contracts. Court action upon the bond is not the exclusive remedy to decide disputed issues. If the contract provides for arbitration, that method for settlement may be enforced. United States v. Electronic Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966); Electronic & Missile Facilities, Inc. v. United States, 306 F.2d 554 (5th Cir. 1962); Agostini Bros. Bldg. Corp. v. United States, 142 F.2d 854, 855 (4th Cir. 1944). See also: "Compulsory Arbitration and Rights Under the Miller Act, Mechanics' Lien Laws, and State Public Improvement Bonds," Vol. IV, Number 3, The Forum, 195 (April, 1969).

proceedings while one claimant arbitrates potentially warps the lien law and permits one claimant to deprive others of their statutory remedies, merely by invoking a contract to which the others are not parties.

Even if no stay of proceedings be granted, the arbitration if compelled will often be futile; for the results will not be binding on the other claimants, who by statute have the right to have the court declare the existence, amount, and priority of all liens. See: NRS 108.235 et seq.