468 A.2d 91

**GOLD COAST MALL, INC.**

v.

**LARMAR CORPORATION.**

**No. 119, Sept. Term, 1982.**

Court of Appeals of Maryland.

Dec. 8, 1983.

Motion for Reconsideration Denied Jan. 13, 1984.

98

Robin R. Cockey and Fulton P. Jeffers, Salisbury (Hearne & Bailey, P.A., Salisbury, on the brief), for appellant.

Victor H. Laws, III, Salisbury (Long, Laws, Hughes & Bahen, Salisbury, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

DAVIDSON, Judge.

This case presents two questions. The first question is whether a court or an arbitrator should initially determine whether a dispute concerning the payment of rent, arising under a lease agreement containing an arbitration clause, is arbitrable. The second question is whether a party to a dispute against whom a claim is asserted, waives the right to arbitrate when the lease requires that arbitration be initiated by the appointment of an arbitrator by each of the parties, but does not expressly place the initial obligation to initiate arbitration on either of the parties and neither party to the dispute has appointed an arbitrator.

In 1976, the petitioner, Gold Coast Mall, Inc. (tenant), leased property from the respondent, Larmar Corporation

(landlord), upon which an enclosed shopping mall known as Gold Coast Mall (mall) is located. The lease agreement (agreement) contained a clause that provided that disputes arising under the agreement be submitted to arbitration. The agreement required that in the event of a disagreement an arbitrator be appointed by each party within 15 days after a 60-day period of negotiation. The agreement did not expressly place the initial obligation to initiate arbitration by appointing an arbitrator on either of the parties.

On 9 June 1980, a dispute arose between the landlord and the tenant concerning the interpretation of a clause in the agreement requiring the tenant to pay the landlord a percentage of the rentals received from its subtenants in the mall (percentage rental dispute). On 18 December 1980, in the Circuit Court for Worcester County, the landlord filed a suit against the tenant seeking a declaratory judgment construing the percentage rental clause and injunctive or monetary relief. On 11 March 1981, the tenant filed a motion raising a preliminary objection on the ground that the agreement required arbitration of the percentage rental dispute. The trial court continued the landlord's suit pending the filing of a petition to compel arbitration by the tenant.

On 7 April 1981, the tenant filed a petition to compel arbitration. The landlord filed a motion for summary judgment. In an oral opinion, the trial court said:

"In essence, what was created by this Lease Agreement, appears to the Court, was an option on the part of the landlord to choose arbitration if he chose to do so, and a requirement from the tenant to arbitrate his disputes rather than go to court. It may be one sided, but it was entered into by the parties."

Thus, the trial court concluded that, although under the agreement the tenant was required to arbitrate the percentage rental dispute, the landlord was not. Additionally, in its oral opinion, the trial court said:

"So, the Court finds further that the arbitration agreement provided for a sixty-day negotiating period following the rise of any dispute. The Court finds that dispute arose no later than the 9th day of June, 1980, upon the writing of that letter by Mr. Brown and concluded—sixty-day period concluded on the 9th of August, and the 15-day period, after which arbitration should have been invoked, expired on the 25th day of August, and accordingly, the Petition for Arbitration at this time is untimely, untimely in the opinion of the Court."

Thus, the trial court concluded that the tenant had waived its right to arbitrate by failing timely to demand arbitration. On 6 November 1981, the trial court issued an order that granted the landlord's motion for summary judgment, denied the tenant's petition to compel arbitration, and entered a final judgment in favor of the landlord.

The tenant appealed to the Court of Special Appeals. That Court assumed without deciding that the tenant "had a right to seek arbitration." It affirmed the judgment of the trial court on the sole ground that the tenant had waived the right to arbitrate by failing to properly initiate arbitration. *Gold Coast Mall, Inc. v. Larmar Corp.*, No. 1732, September Term, 1981, filed 4 August 1982 (per curiam).

The tenant filed a petition for a writ of certiorari that we granted. We shall reverse the judgment of the Court of Special Appeals.

The relevant provisions of the agreement between the landlord and the tenant are Section 27, the arbitration clause, Section 20, the distraint clause, and Section 22, the cumulative remedies clause.

Section 27, the arbitration clause, provides in pertinent part:

"Arbitration. *In the event of disagreement between the parties* during the term hereof which they are unable to resolve within sixty days by negotiation between them, then *it is agreed that such disagreement shall be sub-*

*mitted by the parties to 'informal three-man arbitration',* as hereinafter defined.

"'Informal three-man arbitration', if required hereunder, shall mean the following procedure: *Each party* to the disagreement, *within fifteen (15) days after the 60-day negotiation time, shall appoint one arbitrator* to represent him; the two arbitrators thus appointed shall, within fifteen (15) days after the second of them is appointed, jointly appoint a disinterested, mature and competent person as the third arbitrator; and within fifteen (15) days after said third arbitrator is thus designated, the three arbitrators, by majority vote, shall settle and decide the disagreement. . . . " (Emphasis added.)

Section 20, the distraint clause, provides:

"Distraint and Other Remedies. If the rent agreed to be paid, including all other sums of money which under the provisions hereof may be considered as additional rent, shall be in arrears in whole or in part for thirty or more days after written notice *Landlord may distrain therefor in accordance with legal process.* If Tenant shall violate any convenants, including the covenant to pay rent, made by it in this Lease Agreement and shall fail to comply or commence compliance with said covenant within thirty days after being sent written notice of such violation by Landlord, *Landlord may, at its option, reenter the premises* and declare this lease and the tenancy hereby created terminated; and *Landlord shall be entitled to the benefit of all provisions* of the public local laws of Worcester County or the public general laws of Maryland *respecting the speedy recovery of lands and tenements held over by Tenants or proceedings in forcible entry and detainer.* Tenant further agrees that notwithstanding such reentry Tenant shall remain liable for any rent or damages which may be due or sustained prior thereto." (Emphasis added.)

Section 22, the cumulative remedies clause, provides:

"Remedies Cumulative. *No mention in this Lease Agreement of any specific right or remedy shall preclude Land-*

*lord from exercising any other right or from having any other remedy or from maintaining any action to which it may otherwise be entitled either at law or in equity,* and the failure of Landlord to insist in any one or more instances upon a strict performance of any covenant of this Lease Agreement or to exercise any option or right herein contained shall not be construed as a waiver or relinquishment for the future of such covenant, right or option, but the same shall remain in full force and effect unless the contrary is expressed in writing by Landlord." (Emphasis added.)

## I

 Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. Arbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement. *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 448, 450 A.2d 1304, 1306 (1982); *C.W. Jackson & Associates v. Brooks,* 289 Md. 658, 666, 426 A.2d 378, 382 (1981). A party cannot be required to submit any dispute to arbitration that it has not agreed to submit. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *see C.W. Jackson & Associates,* 289 Md. at 666, 426 A.2d at 382.

 The Maryland Uniform Arbitration Act, enacted in 1965, Maryland Code (1974, 1980 Repl.Vol. & 1983 Cum. Supp.) §§ 3–201 through 3–234 of the Courts and Judicial Proceedings Article, embodies a legislative policy favoring enforcement of executory agreements to arbitrate. *Charles J. Frank, Inc.,* 294 Md. at 448, 450 A.2d at 1306; *Aetna Casualty & Surety Co. v. Insurance Commissioner,* 293 Md. 409, 421, 445 A.2d 14, 19 (1982); *Maietta v. Greenfield,* 267 Md. 287, 291, 297 A.2d 244, 246 (1972). In accord with this legislative policy, the Act strictly confines the function of

the court in suits to compel arbitration to the resolution of a single issue—is there an agreement to arbitrate the subject matter of a particular dispute. § 3–207.[1] *See United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Where the language of the arbitration clause is clear, and it is plain that the dispute sought to be arbitrated falls within the scope of the arbitration clause, arbitration should be compelled. If it is apparent, on the other hand, that the issue sought to be arbitrated lies beyond the scope of the arbitration clause, the opposing party should not be compelled to arbitration, since there is no agreement to arbitrate. *E.g., Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 321, 320 A.2d 558, 566 (1974), *modified on other grounds,* 274 Md. 307, 334 A.2d 526 (1975); *Atcas v. Credit Clearing Corp. of America,* 292 Minn. 334, 341, 347, 197 N.W.2d 448, 452, 456 (1972). Where there is a broad arbitration clause, calling for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable unless expressly and specifically excluded. *E.g., United Steelworkers of America,* 363 U.S. at 581, 584–85, 80 · S.Ct. at 1352, 1354; *New Linen Supply v. Eastern Environmental Controls, Inc.,* 96 Cal.App.3d 810, 817, 158 Cal.Rptr. 251, 255 (1979); *Southern Maryland Hospital Center v. Edward M. Crough, Inc.,* 48 Md.App. 401, 406, 427 A.2d 1051, 1054, *cert. denied,* 290 Md. 721 (1981); *Bel Pre Medical Center, Inc.,* 21 Md.App. at 321, 320 A.2d at 570; *Kaleva-Norman-Dickson School District No. 6, Counties of Manistee v. Kaleva-Norman-Dickson School Teachers' Association,* 393 Mich. 583, 595, 227 N.W.2d 500, 506 (1975); *K.L. House*

---

**1.** § 3–207 provides in pertinent part:

"(a) ... If a party to an arbitration agreement ... refuses to arbitrate, the other party may file a petition with a court to order arbitration.

"(b) ... If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.

"(c) ... If the court determines that the agreement exists, it shall order arbitration."

*Construction Co. v. City of Albuquerque,* 91 N.M. 492, 494, 576 P.2d 752, 754 (1978); *West Fargo Public School District No. 6 of Cass County v. West Fargo Education Association,* 259 N.W.2d 612, 620 (N.D.1977); *see Nelley v. Mayor of Baltimore,* 224 Md. 1, 10, 166 A.2d 234, 238 (1960).

A problem is created for the court when the language of the arbitration clause is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement. Courts that have considered this problem have recognized that under such circumstances the question of substantive arbitrability initially should be left to the decision of the arbitrator, not the courts. *E.g., Katz v. Shearson Hayden Stone, Inc.,* 438 F.Supp. 637, 641 (S.D.N.Y. 1977); *Alco Standard Corp. v. Benalal,* 345 F.Supp. 14, 22 (E.D.Pa.1972); *University of Alaska v. Modern Construction, Inc.,* 522 P.2d 1132, 1137 (Alaska 1974); *Taylor v. Crane,* 24 Cal.3d 442, 450, 155 Cal.Rptr. 695, 700, 595 P.2d 129, 134 (1979) (collective bargaining agreement); *Morris v. Zuckerman,* 69 Cal.2d 686, 690, 72 Cal.Rptr. 880, 884, 446 P.2d 1000, 1004 (1968); *East San Bernardino County Water District v. City of San Bernardino,* 33 Cal.App.3d 942, 954, 109 Cal.Rptr. 510, 518 (1973); *Youmans v. District Court,* 197 Colo. 28, 31, 589 P.2d 487, 489 (1979); *Pettinaro Construction Co. v. Harry C. Partridge, Jr., & Sons, Inc.,* 408 A.2d 957, 962–63 (Del.Ch.1979); *Roosevelt University v. Mayfair Construction Co.,* 28 Ill.App.3d 1045, 1051–52, 331 N.E.2d 835, 840–41 (1975); *School District No. 46, Kane, Cook, & DuPage Counties v. Del Bianco,* 68 Ill.App.2d 145, 155, 215 N.E.2d 25, 30 (1966); *Bel Pre Medical Center, Inc.,* 21 Md.App. at 321–22, 320 A.2d at 566–67; *Minnesota Education Association v. Independent School District No. 495, Grand Meadow,* 290 N.W.2d 627, 631 (Minn.1980) (collective bargaining agreement); *Minnesota v. Berthiaume,* 259 N.W.2d 904, 911 (Minn.1977) (collective bargaining agreement); *Layne-Minnesota Co. v. Regents of the University of Minnesota,* 266 Minn. 284, 290–93, 123 N.W.2d 371, 376–77 (1963); *Nationwide General Insurance Co. v. Investors Insurance Co. of America,* 37 N.Y.2d 91, 95–96, 371 N.Y.S.2d 463, 466–67, 332

N.E.2d 333, 335 (1975); *Stillman v. Stillman,* 80 A.D.2d 356, 358–59, 439 N.Y.S.2d 119, 121–22 (1981); *In re John W. Cowper Co.,* 72 A.D.2d 934, 934, 424 N.Y.S.2d 65, 66 (1979), *affirmed,* 51 N.Y.2d 937, 434 N.Y.S.2d 987, 415 N.E.2d 975 (1980); *Nordenstrom v. Swedberg,* 143 N.W.2d 848, 857 (N.D.1966) (applying Minnesota law); *see Portland Association of Teachers v. School District No. 1, Multnomah County,* 27 Or.App. 247, 250, 555 P.2d 943, 945 (1976). *But see Westbrook School Committee v. Westbrook Teachers Association,* 404 A.2d 204, 207 (Me.1979). The rationale underlying this conclusion was articulated by the Supreme Court of Minnesota in *Layne-Minnesota Co. v. Regents of the University of Minnesota,* 266 Minn. 284, 290–92, 123 N.W.2d 371, 376–77 (1963). There that Court said:

"[T]he records of the National Conference of Commissioners on Uniform Laws, and particularly the writings of the chairman of the subcommittee that undertook the drafting of the act, disclose that the problem of judicial interference with the question of arbitrability was intended to be governed by § 2 of the Uniform Act, now Minn.St. 572.09.[2] Apart from these writings, the language of § 572.09(a, b) expressly authorizes a court to interfere and protect a party from being compelled to submit to arbitration proceedings where no arbitration agreement exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract. Such construction does no violence to the purpose of the act since a party should not be compelled to go to the expense, trouble, and hazard of the arbitration process when he has clearly not agreed to do so. The

---

**2.** Minn.Stat. § 572.09 then provided in pertinent part:

"(a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." Minn.Stat.Ann. § 572.09(a) (West Supp.1983).

difficulty lies in applying this rule when the intention of the parties is not clearly expressed. *Where the parties are in conflict as to the scope of the provision for arbitration, and the question of the parties' intention as to such scope is reasonably debatable, the problem arises as to whether the court or the arbitrators shall decide the question. We believe in such cases the rule should be, and we hold, that the issue of arbitrability be initially determined by the arbitrators* . . . . Such a rule is consistent with the purpose and objectives of the Uniform Act. . . . To construe § 572.09(a) to authorize a preliminary judicial determination of whether or not the applicant presented an issue referable to arbitration would be to add nonexistent language. Such a construction, in many instances, might be destructive of the arbitration clause itself." (Footnote omitted) (footnote added) (emphasis added).

 We are persuaded that when the language of an arbitration clause is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement, the legislative policy in favor of the enforcement of agreements to arbitrate dictates that ordinarily the question of substantive arbitrability initially should be left to the decision of the arbitrator. Whether the party seeking arbitration is right or wrong is a question of contract application and interpretation for the arbitrator, not the court, and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by attempting to resolve the ambiguity. Under such circumstances, arbitration should be compelled. *Bel Pre Medical Center, Inc.,* 21 Md.App. at 321, 320 A.2d at 566.

Here Section 27, the arbitration clause, provides that "in the event of disagreement between the parties . . . which they are unable to resolve within sixty days . . . such disagreement shall be submitted . . . to . . . arbitration. . . . " The language of this broad arbitration clause is clear. It appears to require both parties to arbitrate any and all disputes arising out of the agreement. No type of

controversy is expressly or specifically excluded from the requirement to arbitrate.

 If the arbitration clause were the only provision in the agreement relating to the rights and remedies of the landlord in the event of a dispute arising under the agreement, there would seem to be no question that arbitration of the percentage rental dispute would be required. However, when interpreting an arbitration clause, as when interpreting any contract provision, the agreement must be considered as a whole. *Simpson v. Simpson,* 194 Neb. 453, 457, 232 N.W.2d 132, 136–37 (1975); *King County v. Boeing Co.,* 18 Wash.App. 595, 603, 570 P.2d 713, 717 (1977). Here Section 20, the distraint clause, and Section 22, the cumulative remedies clause, appear to provide the landlord with rights and remedies other than arbitration. Under these circumstances, the scope of the existing arbitration agreement becomes somewhat unclear. A question arises as to whether the landlord is required to arbitrate the percentage rental dispute. That question of substantive arbitrability should be left to the decision of the arbitrator. Under such circumstances, arbitration should have been compelled.

## II

 Having determined that the question whether the percentage rental dispute is arbitrable is itself arbitrable, we must now determine whether the tenant, against whom the landlord's claim is asserted, has waived the right to arbitrate by failing to appoint an arbitrator within the time constraints set forth in the agreement.[3] This Court has recognized that because the right to arbitrate is a matter of contract, it is possible for parties to waive that right. *Charles J. Frank, Inc.,* 294 Md. at 448, 450 A.2d at 1306. We

---

**3.** It should be noted that this Court has previously held that the question of compliance with the procedural prerequisite of a timely demand growing out of an arbitrable dispute should be determined by the court. *Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.,* 274 Md. 307, 314–15, 334 A.2d 526, 530–31 (1975).

have frequently considered the criteria applicable to the waiver of a contractual right. Thus, in *Bargale Industries, Inc. v. Robert Realty Co.,* 275 Md. 638, 643, 343 A.2d 529, 533 (1975), this Court said:

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. *'[A]cts relied upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions."* (Emphasis added.)

The intention to waive must be clearly established and will not be inferred from equivocal acts or language. Whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstance of each case. *Charles J. Frank, Inc.,* 294 Md. at 448–49, 450 A.2d at 1306–07. Thus, we need now determine whether the tenant's conduct in failing to appoint an arbitrator within the time constraints set forth in the agreement constitutes a waiver of the tenant's right to arbitrate the percentage rental dispute.

Courts in most other jurisdictions that have considered whether failure to initiate arbitration constitutes a waiver of the right to arbitrate have decided that in the absence of express language in a contract placing the initial obligation of seeking arbitration on either of the contracting parties, it is the responsibility of the party asserting a claim to initiate arbitration. *E.g., Shanferoke Coal & Supply Corp. v. Westchester Service Corp.,* 70 F.2d 297, 299 (2d Cir.), *aff'd,* 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); *In re Necchi Sewing Machine Sales Corp.,* 260 F.Supp. 665, 668 (S.D.N.Y. 1966); *Lane-Tahoe Inc. v. Kindred Construction Co.,* 91 Nev. 385, 389, 536 P.2d 491, 494 (1975); *Babcock v. Sol Corp. of Maine,* 118 N.H. 340, 342, 386 A.2d 1259, 1260–61 (1978); *Tothill v. Richey Insurance Agency,* 117 N.H. 449, 453, 374 A.2d 656, 658 (1977); *In re Finkelstein,* 33 Misc.2d 929, 228 N.Y.S.2d 502, 503 (Sup.Ct.N.Y.1961), *aff'd,* 17 A.D.2d 137,

233 N.Y.S.2d 174 (1962); *In re New York Central Railroad Co.,* 30 Misc.2d 362, 213 N.Y.S.2d 15, 22 (Sup.Ct.N.Y.1961); *Klein Coat Corp. v. Peretz,* 4 Misc.2d 341, 153 N.Y.S.2d 92, 97–98 (Sup.Ct.N.Y.1956); *Guerra v. Krueger Corp.,* 4 Misc.2d 696, 150 N.Y.S.2d 759, 760 (Sup.Ct.Bronx 1956); *Rettig v. Taylor Public School District No. 3,* 211 N.W.2d 743, 749 (N.D.1973); *Nordenstrom v. Swedberg,* 143 N.W.2d 848, 857 (N.D.1966); *Mamlin v. Susan Thomas, Inc.,* 490 S.W.2d 634, 639 (Tex.Civ.App.1973). Cf. *Demers Nursing Home, Inc. v. R.C. Foss & Son, Inc.,* 122 N.H. 757, 761, 449 A.2d 1231, 1233 (1982).[4] The rationale underlying these cases is that a party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement.

In *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.,* 70 F.2d 297 (2d Cir.1934), *aff'd,* 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935), a seller sued a buyer for breach of contract. The contract required the submission of "any dispute" to arbitration. The buyer answered, denying a number of allegations, interposing the existence of the arbitration agreement as a defense, and moving to stay the action on the ground that the seller had refused to arbitrate. In determining that the stay should be granted, Judge Learned Hand, writing for a unanimous court, stated:

---

**4.** *Sucrest Corp. v. Chimp Shipping Ltd.,* 236 F.Supp. 229, 230 (S.D.N.Y.1964) and *Mayron's Bake Shops, Inc. v. Arrow Stores, Inc.,* 149 Conn. 149, 154, 176 A.2d 574, 576 (1961), relied upon by the landlord to establish that it is the responsibility of the party against whom a claim is asserted to initiate arbitration, are inapposite. In light of subsequent cases, the principle articulated in *Sucrest Corp.* no longer appears to be viable. *Tradax Ltd. v. M.V. Holendrecht,* 550 F.2d 1337, 1338 n. 3 (2d Cir.1977); *Lowry & Co. v. S.S. LeMoyne D'Iberville,* 253 F.Supp. 396, 400 (S.D.N.Y.1966), *appeal dismissed,* 372 F.2d 123 (2d Cir.1967).

*Mayron's Bake Shops, Inc.* is distinguishable on its facts. There the party against whom a claim was asserted moved to stay the court proceedings brought against it on the ground that the dispute was arbitrable. The court determined that the moving party had waived the right to arbitrate because it neither had designated an arbitrator nor moved to compel arbitration. Here, the tenant, against whom a claim was asserted, has moved to compel arbitration.

"The plaintiff further objects that the defendant is 'in default in proceeding with such arbitration,' within the meaning of section 3. True, it has not named its arbitrator, but in its answer and moving affidavits has merely expressed its willingness to submit to arbitration. This appears to us enough. It was the plaintiff who declared the contract to be at an end; and with that the defendant was contented. If the plaintiff meant to proceed further and enforce a claim for damages, the initiative rested upon it; it should have named the first arbitrator. If it did not but sued instead, it was itself the party who fell 'in default in proceeding with such arbitration,' not the defendant." *Shanferoke Coal & Supply Corp.,* 70 F.2d at 299.

In *Lane-Tahoe, Inc. v. Kindred Construction Co.,* 91 Nev. 385, 536 P.2d 491 (1975), a landowner and two contractors had entered into contracts for the construction of certain buildings. Each contract required the submission of "all claims, disputes and other matters in question" to arbitration. Additionally, each required that notice of the demand for arbitration be filed in writing with the other party and that the demand be made within a reasonable time after the dispute had arisen. The contractors brought lien foreclosure proceedings. The landowner moved to stay the court action and to compel arbitration. In determining that the stay should be granted and that arbitration should be compelled, the Supreme Court of Nevada said:

"Although Lane-Tahoe did not file a written demand for arbitration, neither did McKenzie nor Kindred. All had agreed, however, to settle their disputes in that manner. In view of that agreement, one of the contracting parties was obliged to initiate the arbitration process. *Absent express language in the contract placing the initial burden on either party, that responsibility properly rests with the party seeking relief.* He should not be free to litigate in the courts simply because his opponent did not demand arbitration. This is not to say that the opponent could not have initiated arbitration. *We hold only that*

*the burden to initiate arbitration is upon the party seeking relief and does not shift to the opponent absent a clear waiver of arbitration by the opponent.* The parties seeking relief in these cases, that is, payment for the claimed balances due for their work, are the contractors McKenzie and Kindred.

"This view is compatible with NRS 38.045(1) which explicitly provides that on application of a party showing an agreement to arbitrate and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. The thrust of the statute is to compel the contracting parties to honor their promises. The agreements to arbitrate are admitted. McKenzie and Kindred, who seek relief, did not initiate arbitration. Instead, they commenced court action. *This, we think, is a refusal to arbitrate within the intendment of NRS 38.-045(1)." Lane-Tahoe, Inc.,* 91 Nev. at 389, 536 P.2d at 494 (citations omitted) (emphasis added).

Courts in New York have repeatedly reached the same conclusion. *E.g., In re Finkelstein,* 228 N.Y.S.2d at 503; *In re New York Central Railroad Co.,* 213 N.Y.S.2d at 22; *Klein Coat Corp.,* 153 N.Y.S.2d at 97–98; *Guerra,* 150 N.Y. S.2d at 760. Illustrative is the case of *Klein Coat Corp. v. Peretz,* 4 Misc.2d 341, 153 N.Y.S.2d 92 (Sup.Ct.N.Y.1956). There a buyer sued a manufacturer to recover overpayments for work, labor and services provided pursuant to a contract. The contract required the submission of "all complaints, disputes or grievances" to arbitration. The manufacturer moved to stay the court action on the grounds that the claims were subject to arbitration. In determining that the stay should be granted, the trial court said:

"*[T]he offensive in instituting proceedings for arbitration lies with the aggrieved party,* and it was the plaintiff who contended, and still does, that it had been wronged. While unreasonable delay in invoking Section 1451 of the Civil Practice Act—after an action is instituted—will constitute waiver, the defendants in this case did not waive the arbitration agreement by not bringing proceedings to

enforce it under Section 1458 of the Civil Practice Act. *The defendants were not under an obligation to act until there was an action brought—and then they must within a reasonable time present the arbitration agreement as a bar.* That is what the defendants have done here. They have not engaged in any acts inconsistent with the arbitration agreement which would constitute a waiver thereof." *Klein Coat Corp.,* 153 N.Y.S.2d at 97 (citations omitted) (emphasis added).

At least one commentator has also recognized that the party against whom a claim is asserted does not waive the right to arbitrate by failing to initiate arbitration. Professor Domke, in his treatise entitled *The Law and Practice of Commercial Arbitration* states:

"Often a party challenges the right of the other party to avail itself of arbitration not because of noncompliance with time limits or laches, but because that party did not avail itself of the arbitration, in other words, it took no affirmative action. However, there appears to be no duty to such action. It was said, in this regard, 'That defendants have not demanded arbitration is no reason for a denial of a stay of the action for plaintiff may institute the arbitration proceedings.' *In practice, a party respondent may wish to see a controversy settled by the arbitration agreed upon, but does not wish to proceed when he has no claim to advance himself. No one appears to be bound to proceed for a finding that he is not obligated to perform certain obligations allegedly due to the other party, in a so-called declaratory action.*" M. Domke, *The Law and Practice of Commercial Arbitration* § 19.01 at 180 (1968) (footnote omitted) (additional emphasis added).

 We are persuaded that a party against whom a claim is asserted, and who is not therefore seeking relief, does not have an obligation to initiate arbitration. It is antithetical to the interests of such a party to itself initiate a proceeding, be it a court suit or arbitration, that would expose it to the risk of liability. It is the responsibility of the party asserting the claim to initiate arbitration. A

party asserting a claim who sues instead of seeking arbitration is in essence refusing to arbitrate and is itself in default of the arbitration agreement.

Accordingly, we now hold that ordinarily a party against whom a claim is asserted and who is not seeking relief, does not waive the right to arbitrate by a failure to initiate arbitration.[5] Such a result is consonant with § 3–107(a) of the Courts and Judicial Proceedings Article which provides that "[if] a party to an arbitration agreement . . . refuses to arbitrate, the other party may file a petition with a court to order arbitration."

Here the record shows that the agreement between the landlord and the tenant required any and all disputes to be submitted to arbitration. Additionally, the agreement required that each party appoint an arbitrator within 15 days after a 60-day period of negotiation. The agreement did not expressly place the initial obligation to initiate arbitration by appointing an arbitrator on either of the parties. Neither of the parties initiated arbitration by the appointment of an arbitrator.

Because the landlord was asserting a claim, it was the landlord's and not the tenant's initial obligation to initiate arbitration. The landlord, however, did not initiate arbitration. Rather, it sought relief by asserting its claim in the trial court. This action by the landlord constituted a refusal to arbitrate.

In the trial court the tenant did not file an answer on the merits. Rather, it filed a motion raising preliminary objection on the ground that the agreement required arbitration

---

5. We note that a party against whom a claim is asserted may waive the right to arbitrate by participating in a judicial proceeding without making a motion to compel arbitration. *See Charles J. Frank, Inc.,* 294 Md. at 450, 450 A.2d at 1307, in which this Court held that a party against whom a claim was asserted had waived its right to arbitrate those issues raised and decided in a previous court proceeding in which it had not filed a motion to compel arbitration. *See also Mayron's Bake Shops, Inc.,* 149 Conn. at 154, 176 A.2d at 576, at footnote 4 above.

of the percentage rental dispute and filed a petition to compel arbitration. Under these circumstances, the tenant did not engage in any conduct inconsistent with an intention to insist upon enforcing the right to arbitrate. Accordingly, the tenant did not waive the right to arbitrate the percentage rental dispute.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AND TO REMAND THE CASE TO THAT COURT FOR THE ENTRY OF AN ORDER IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.