McDONALD, j.,
dissenting.
I would affirm the well-reasoned decisions of the Circuit Court and the Court of Special Appeals. The Circuit Court directed Baltimore County to comply with the procedures set forth in the County’s Employee Relations Act for resolution of unfair labor practice complaints. For the reasons articulated by the Circuit Court on the record and elaborated on by the intermediate appellate court, that order was a straightforward application of the County law.

Resolution of Unfair Labor Practice Complaints under the Employee Relations Act

The Employee Relations Act of the Baltimore County Code (“BCC”) authorizes the County administration to collectively bargain with employee unions — i.e., to “negotiate in good faith with an exclusive representative ... relating to wages, hours, *581 and other terms and conditions of employment ...” BCC § 4-5 — 201(a)(2); see also BCC § 4-5-310(a). The results of such negotiations are to be incorporated in a memorandum of understanding (“MOU”), signed by representatives of management and of the employees. BCC § 4 — 5—310(a)(2)(ii).
A failure to negotiate in good faith — by either the County administration or a union — is an “unfair labor practice” as defined by the Employee Relations Act. BCC § 4 — 5—203(a)(4), (c)(3). The Act further sets forth the procedure for resolving a claim by one party that the other party failed to negotiate in good faith. If either the County or the union wishes to pursue such a claim — or any other claim of an unfair labor practice— it is to file a verified complaint with an independent third party agency that has been designated by the Director of Human Resources. BCC § 4-5-204(a)(l). Note that the Employee Relations Act does not give the Director of Human Resources any role in reviewing or resolving a complaint filed by either the County or the union — indeed, there is no indication in the law that the Director would even receive a copy of the complaint before it is submitted to the third party agency. Rather, the Director’s sole function under the law is to designate the “independent third party agency” to receive and resolve the complaint.
The independent third party agency is then tasked, under the remaining provisions of the law concerning such complaints, to take any further action necessary to decide whether to dismiss the complaint or to order a remedy. BCC § 4-5-204(b)-(d). Under these provisions, the third party agency could decide to dismiss a complaint on its face, or it could decide that further investigation, and perhaps a hearing, would be necessary to resolve the merits of the complaint. Under the Act, those decisions are entrusted to the independent third party agency — not the Director of Human Resources. Id.
Here the County has attempted to short-circuit this process. The union wishes to pursue an unfair labor practice complaint that the County failed to negotiate in good faith concerning *582 the elimination of an attendance incentive payment. Although the Director initially began the dispute resolution process under the Employee Relations Act for that complaint,[1] he abruptly reversed course, prompting this litigation. In an action akin to a court clerk taking it upon himself without court involvement to reject the filing of a complaint because it failed to state a claim upon which relief could be granted, the Director refused to process the FOP’s complaint as required by the County law. The Circuit Court properly ordered the County to follow its own law to resolve that complaint. It bears emphasis that the Circuit Court did not order the County to negotiate with the union concerning the attendance incentive payment. Rather, it simply ordered the County not to obstruct the unfair labor practice complaint resolution process in the Employee Relations Act. That process might well result in a determination that the unfair labor practice complaint is unfounded, as the County contends.

Process v. Merits

In my view, the Majority Opinion confuses the merits of the underlying complaint with the process for resolving that complaint. The Majority Opinion states that “had the Attendance Recognition Program ... been a subject matter that was negotiable clearly by the terms of the [Employee Relations] Act, the Director [of Human Resources] would have had an imperative duty to designate an independent third party agency and thereby to initiate the arbitration process.” Majority op. at 574, 96 A.3d at 758.[2] But whether the particular *583 monetary benefit at issue should have been the subject of negotiation goes to the merits of the complaint that the County had refused to negotiate over a matter subject to collective bargaining. The County makes a persuasive argument why its elimination need not have been the subject of negotiations — as a unilateral management policy — and the third party agency might well have been persuaded by that argument. But it is not for the County — or for us — to short-circuit the process required under the Employee Relations Act.

A Catch-22

The Majority appears to argue that, in order to bring the topic of an unfair labor practice complaint concerning a failure to negotiate within the dispute resolution process, the FOP should make sure it is included in an MOU. Majority op. at 574-75, 96 A.3d at 758. But this creates a Catch-22: Under this theory, in order to bring an unfair labor practice charge for failure to negotiate in good faith, one needs to make sure that the issue is part of the MOU; but an issue becomes part of the MOU only if it is a product of those negotiations; but if one party refuses to negotiate the matter, it will not become part of the MOU; and the aggrieved party cannot file an unfair labor practice complaint to compel negotiations on the item because the item is not part of the MOU, ad infinitum.[3]
This is a bit backwards. The County is obliged under the Employee Relations Act to negotiate in good faith with respect to “wages, hours, and terms and conditions of employment.” *584 BCC § 4 — 5—310(a)(2)(i). The results of that negotiation are to be embodied in an MOU. The MOU is the end result of negotiations; it does not circumscribe the universe of possible subjects of negotiation. The MOU by definition sets forth what the parties have agreed upon, see BCC § 4-5-312(a); it does not necessarily indicate what they negotiated or attempted to reach agreement on, or what could be the subject of negotiation.[4] The fact that the parties have agreed to include an item in an MOU would, of course, make it difficult for either of them to claim that it was not a proper subject of negotiation. But the converse proposition — that the absence of an item from an MOU renders it ineligible for good faith negotiations — is certainly not true. And that is where the third party independent agency comes in.[5]

Dispute Resolution under County Law v. Arbitration of a Grievance under an MOU

In ruling that the Director was not obligated to designate a third party agency to resolve the issue of negotiability, the Majority relies on the principle that “a party cannot be required to submit any dispute to arbitration that it has not agreed to submit.” Majority op. at 579, 96 A.3d at 761.[6] It *585 appears that the Majority has confused the dispute resolution process provided for complaints of unfair labor practices under the Employee Relations Act[7] with an arbitration process for grievances that might be part of an existing MOU.[8] The dispute resolution process at issue in this case is not the creature of an agreement between the County administration and the FOP, such as an MOU; it is required by County law. The third party agency designated by the Director serves the same function under County law to resolve complaints of unfair labor practices as the National Labor Relations Board serves under federal law[9] and the State Labor Relations Board serves under State law.[10] This is not a case in which the County administration is being compelled to do something it has not agreed to. Rather, the order of mandamus compelled the County administration to comply with County law.

An Analogy: The MCEA Case

An analogy can be drawn to the situation in Montgomery County Education Association, Inc. v. Board of Education of Montgomery County, 311 Md. 303, 534 A.2d 980 (1987) (“MCEA case”). Under a State statute, the Montgomery County school system was authorized to engage in collective bargaining with the teacher’s union — much as the Employee Relations Act authorizes the County administration to engage in collective bargaining with County employees in the present case. Like the County Employee Relations Act, the statute governing collective bargaining for teachers in the MCEA case *586 provided for resolution of disputes over whether a county school system had failed to negotiate in good faith. Such complaints were to be resolved by an independent third party — the State Board of Education — an entity that was separate from the county school system and that was not itself involved in collective bargaining.
The MCEA case concerned a contention by the teacher’s union, first made in 1970 and renewed in 1983, that the Montgomery County school system had failed to negotiate in good faith when it changed the school calendar and reclassified certain jobs without negotiating those changes with the union. In contrast to what happened in the present case, in both instances, the Montgomery County school system did not assert that it could somehow decide that an issue was nonnegotiable. Rather, the dispute was referred to the State Board of Education — which, as noted above, served the same function as the independent third party agency in the present case. In the MCEA case, the State Board of Education decided the question of negotiability in the county school system’s favor, both as to the 1970 complaint and as to the later 1983 complaint. The 1983 determination was ultimately affirmed by the Court of Appeals in the decision cited above.
The same result might well occur here — i. a, management might well prevail on the negotiability of the discontinuance of the attendance incentive payment in this case. But the County has attempted to short-circuit the process by not permitting the appropriate decision-maker to come to that conclusion.

Conclusion

In this case, the County refused to comply with the provision of the Employee Relations Act requiring that unfair labor practice charges be resolved by an independent third party agency. This Court has, in effect, assumed the function of the independent third party agency and resolved the merits of the FOP’s complaint. Without purporting to comment on the merits of this particular allegation of an unfair labor practice myself, I am confident that my colleagues in the Majority *587 could discharge that function fairly. But it is simply not our role to do so.

. On September 14, 2011, the Director of Human Resources wrote to the FOP indicating his choice for an independent third party agency and seeking the FOP's assurance that it would pay its share of .the cost of the process.

. It could be that, given its reference to “clearly negotiable” matters, the Majority is confusing (1) the use of a third party agency (or arbitrator) to decide the merits of an unfair labor practice claim concerning what is negotiable with (2) the use of an arbitrator to resolve a negotiating impasse during collective bargaining over clearly negotiable matters. See BCC § 4-5-401 et seq. (setting forth dispute resolution process involving mediators, fact finders, and arbitrators for impasses in bargaining).

. The Court of Special Appeals recognized the circular nature of the County's argument in its opinion:
... [I]f we follow Baltimore County’s train of thought, the County contends that because it believes it is under no duty to negotiate, no unfair labor practice was committed, and [the Director of Human Resources] was under no duty to designate an independent third party agency to review FOP's complaint. It appears that Baltimore County has placed the proverbial cart before the horse.
... Baltimore County's proposed interpretation, if adopted, would render the entire dispute resolution system outlined in the Employee Relations Act meaningless.
Baltimore County v. Fraternal Order of Police, Lodge No. 4, No. 0830 (June 21, 2013), slip op. at pp. 17-18.

. As the County law makes clear, good faith negotiation does not require that either party make any particular concessions in negotiations. BCC § 4-5-310(b)(2).

. The confusion over these two propositions and the role of the third party agency is evident in a passage of the Majority opinion that is repeated in a footnote. On the one hand, the Majority refers to the discontinuance of the attendance incentive payment as “ostensibly” and "patently" non-negotiable. Majority op. at pp. 552-53, 575-76 & n. 19, 96 A.3d at 744-45, 758-59 & n. 19. At the same time, it suggests that the FOP could negotiate to have the attendance incentive payment added to its MOU — a suggestion that assumes the item is negotiable. Majority op. at pp. 575-76 & n. 19, 96 A.3d at 758-59 & n. 19. It is not our role — or the Director’s in this context — to reach either conclusion as to negotiability. That is the job of the third party agency.

. Unsurprisingly, both cases cited by the Majority for that proposition involved agreements to arbitrate, not dispute resolution processes created by law. See Gold Coast Mall v. Larmar Corp., 298 Md. 96, 468 A.2d 91 (1983) (arbitration clause in lease of real property); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 *585 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (grievance arbitration provision in collective bargaining agreement).

. BCC § 4-5-204(a)(l).

. Under BCC § 4-5-314(a)(1), the parties to an MOU may agree upon an arbitration process for grievances and include it in the MOU. Unlike the dispute resolution process for unfair labor practices, the Employee Relations Act does not mandate or create that arbitration process; it merely authorizes the parties to agree to one.

. 29 U.S.C. § 160.

. Maryland Code, State Personnel & Pensions Article, § 3 — 205(b)(3).